SARAH LANCASTER

*v.*

MARY J. BLANEY *et al.*

*Filed at Springfield January 15, 1892.*

1. DEED—*sufficiency of proof of delivery.* In 1874, A, being in embarrassed financial condition, and for the purpose of securing his property against being subjected to the payment of a heavy security debt, with his wife made and delivered two deeds to his brother, conveying his lands. The deeds were recorded at once, and on the same day the brother and his wife made two other deeds for the same lands to A's wife, which were not recorded until after the death of the first grantor, in 1888, when they were found in his trunk of papers. In 1876, being released of his liability, his brother and wife conveyed the same lands back to A, which deed was immediately recorded. A occupied the land to his death and paid all taxes thereon, and the property was taxed in his name, and his widow set up no claim to the same, or any part thereof, until the deeds were found : *Held,* that these facts were sufficient, *prima facie,* to establish the fact that the two deeds to the wife were never delivered to or accepted by her, and therefore never became operative.

2. WITNESS—*competency of widow in partition proceeding by heirs.* Where the widow of a deceased person sets up a claim to land sought to be partitioned by the heirs of the decedent, she is not a competent witness in her own behalf to testify to facts not within the exception in section 2 of chapter 51 of the statute, for the purpose of defeating the title of the heirs to the land.

3. EVIDENCE—*statements of widow after husband's death.* In a suit between a widow and the heirs of her deceased husband in respect to the title of land, the widow can not, by statement of facts after the husband's death, or of past transactions, make evidence in her own behalf, and prove them on the trial as evidence in her favor.

APPEAL from the Circuit Court of Macoupin county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Mr. ALEXANDER H. BELL, for the appellant :.

Presumption of delivery of possession of deed and proof to rebut. *Reed* v. *Douthit,* 62 Ill. 350 ; *Tunison* v. *Chamblin,*

88 id. 387; *Rivard* v. *Walker*, 39 id. 413; *Otis* v. *Spencer*, 102 id. 622.

The deed will be presumed to be a settlement on the wife. 2 Story's Eq. Jur. secs. 1201-1204; *Reed* v. *Douthit, supra; Stevenson* v. *Crapnell*, 114 Ill. 19; *Cline* v. *Jones*, 111 id. 563; *Hill* v. *Hill*, 119 id. 242.

Mr. JOHN M. PALMER, and Mr. C. A. WALKER, for the appellees:

The essentials of delivery are act and intention. *Weber* v. *Christen*, 121 Ill. 94.

Delivery is shown by the intention of the grantor to part with the title, and proof that the control of the deed passes from the grantor to the grantee. *Roane* v. *Baker*, 120 Ill. 309.

Mr. JUSTICE BAKER delivered the opinion of the Court:

In January, 1874, John Lancaster, since deceased, had become liable, as security for one Mills, for about $11,000, and was fearful that he would be pressed by some of his creditors. On the 17th day of that month he, his wife, Sarah Lancaster, the appellant, joining with him, executed to Francis W. Lancaster two certain deeds, each being for portions of lands which are now in controversy. On the same day these deeds were duly acknowledged and recorded, and it is conceded by all parties that they were effective to convey title to said Francis W. Prior to March 7, 1876, said John Lancaster had paid off his indebtedness, and he thereupon procured from Francis W., and from Caroline, wife of Francis W., a quitclaim deed for the lands described in the two conveyances that he and his wife had made to said Francis W., and said quitclaim deed was acknowledged on the 13th day of March, 1876, and recorded on the 14th of March, 1876. On January 17, 1874, it being the same day that the lands were conveyed to Francis W. Lancaster, the latter, his wife joining with him, made and acknowledged two deeds, which purported to convey

the lands in question to Sarah Lancaster, the appellant. The two latter deeds were delivered to John Lancaster, and were not recorded at the time, nor until many years thereafter. Francis W. Lancaster died in June, 1883, and John Lancaster died in the early part of March, 1888. Administration was had upon the estate of the latter, and in May, 1888, the papers of said John Lancaster were taken from his trunk by one Miss Drucey, in the presence of the administrator, and handed to said administrator. The administrator took the papers, consisting of notes, accounts, etc., from Carlinville, to his place of residence in Bunker Hill, and upon examination found among them the two deeds made by Francis W. and wife, and purporting to convey the lands to appellant. The administrator reported the finding of said deeds to appellant, and at her request he had them recorded on the 19th day of May, 1888.

In this suit for partition, brought by appellees, who are heirs-at-law of John Lancaster, deceased, the material question is, whether there was such a delivery and acceptance of the two deeds dated January 17, 1874, and made by Francis W. Lancaster and wife to appellant, as worked a transfer of the title to the lands therein described, to appellant.

Upon the cross-examination of the administrator of the deceased, he testified to certain statements that were made by appellant at the time that he reported to her the finding of the deeds and took them to her. Said testimony was objected to by appellees. So, also, at the hearing, appellant was examined as a witness in her own behalf, but subject to objection. There can be no question but that appellant is directly interested in the event of the suit, and that appellees, the adverse party, defend as heirs of John Lancaster, their deceased father, and she was examined of her own motion, and her testimony is not within either of the five exceptions laid down in section 2 of the Evidence and Depositions act. (Rev. Stat. chap. 51, sec. 2.) The case of *Connelly et al.* v. *Dunn et al.* 73 Ill. 218,

seems to be in point. There, on bill by the heirs-at-law of a deceased person, against his widow, for partition of land, and cross-bill by the widow to have a resulting trust declared in her favor, it was held that such widow was not a competent witness against the heirs. In respect to the statements of appellant testified to by the administrator, no citation of authority is necessary to show that appellant could not, by statements of facts or of past transactions, make evidence in her own behalf. The testimony of appellant, and said statements, should both be excluded from consideration.

The facts and circumstances that John Lancaster was in an embarrassed financial condition; that four deeds were made and acknowledged on the 17th day of January, 1874; that of these the two purporting to convey to Francis W. Lancaster were forthwith recorded, and the two purporting to convey to appellant withheld from record and delivered to John Lancaster, and placed in the trunk of said John among other deeds and notes, accounts, tax receipts and other papers belonging to him, and found in his trunk, unrecorded, some fourteen years thereafter and after his decease; that in 1876, and soon after the indebtedness of said John was settled, Francis W. Lancaster, the grantor in the two deeds made to appellant, conveyed the premises described therein to said John, and said conveyance was at once recorded; that John continuously remained in possession of the lands until his death, and leased and rented the same in his own name, and collected the rents, and that the lands were assessed in his name and the taxes paid by him and in his own name, and that appellant never claimed to own the lands, or mentioned the deeds made to herself until many years after the death of the grantor therein and after the death of her husband, and the fact of the existence of such deeds was brought to her attention by the administrator of such husband, would seem to establish, *prima facie,* that the two deeds in controversy were never de-

livered to or accepted by appellant, and therefore never became operative to work a conveyance of the lands to her.

There is evidence found in the record which is relied on by appellant as establishing the contrary conclusion. In the trunk of the deceased husband there was also found an unsigned and unexecuted quitclaim deed from appellant to said husband. Said deed bore date March 7, 1876, which was the date of the quitclaim deed from Francis W. Lancaster and wife to the same grantee. The existence of this deed is in the nature of a recognition or admission by the husband of the title of the wife. We think, however, that the most reasonable explanation of the circumstance is, that John Lancaster, having recovered from his financial troubles, was desirous of getting the title of the lands back in himself, and in view of the four deeds that were made in January, 1874, had two quitclaim deeds prepared, both dated March 7, 1876, one to be executed by Francis W. Lancaster and wife and the other by his own wife, and that upon further consideration, and probably after consultation with said Francis W., he concluded that a deed from the latter was all that was required to reinvest him with title. This was a reasonable and proper conclusion to reach, in view of the fact the deeds to the wife had never been recorded, provided the delivery of said deeds by Francis W. to John was not for the purpose of investing the wife of John with present and absolute title, but merely for the purpose of providing against future contingencies, and provided said deeds had never been handed to appellant nor she informed of their existence. That such delivery to John was not intended to work a divestiture of the title of Francis W., by either John or Francis W., would seem to be indicated by the fact they were not recorded while the other two deeds of the same date were, that Francis W. afterwards assumed to convey the lands to John, that the latter accepted the conveyance so made and was apparently content to rely upon it alone, and that more than fourteen years thereafter the two

deeds, still unrecorded, were found among his papers. If the deeds never came to either the hands or the knowledge of appellant until the spring of 1888, then there can be no presumption of her acceptance of them, for no such presumption can arise in respect to a grantee who is not under legal disability, so long as he or she is ignorant of the conveyance. *Moore* v. *Flynn et al.* 135 Ill. 74.

Francis Lancaster, brother of John Lancaster and father of Francis W. Lancaster, testified at the hearing, that about the time of the trouble about the Mills security debt his brother John told him that "he had deeded this property to Francis W. from fear some one would jump on him in a hurry; * * * that he would sell the land to Frank in consideration that Frank should deed it back to John's wife, so that she would have a home to go to if anything should happen to him; * * * that he would have Frank convey the property to his wife, Sarah, so that if anything should happen to him she would have a home to go to, * * * and that his purpose was to save his wife, so she could have a home." The witness also testified in regard to said conversation: "I understood John to say that to secure himself he would convey this property to my son, Francis W., and that Francis W. should convey it back to John's wife, so that she would have a home to go to. This conversation was after the deeds were made. I understood from the conversation that it was to save John, and his wife, too. John stated in this conversation that he had conveyed this property to Frank, and had Frank convey it back to his wife, to give him time to sell off other property." David W. Hart, another witness for appellant, testified that John Lancaster, after the conveyances were made, told him "that in case anything should happen to him he had the property deeded to his wife; * * * that he had made the deed to Frank, and that he deeded the property back to John's wife, to make her safe in case anything happened to him; * * * that he and his wife had deeded

the property to Frank to keep the creditors off in the Mills matter, and that he had the property deeded back to his wife, so that she should have a home if anything happened to him."

When the above testimony is read and considered in the light of all the surrounding facts and circumstances, we think that it is corroborative, rather than otherwise, of the theory that when the two deeds were made by Francis W. Lancaster and handed to John Lancaster, it was not intended by either of said parties thereby to invest appellant with the title of the lands described therein, but the intention was merely to make provision for certain apprehended contingencies.

There is one item, however, in the testimony of the witness Hart, that can not be thus explained. In answer to a question asked him on his direct examination he said: "I don't know that he (meaning John Lancaster) told me what was done with the deeds. I think he said he gave them to her." Upon his cross-examination, the witness, in purporting to detail the whole conversation, omitted the above statement, and said that he did not remember anything more that Lancaster had said about the transaction or the deeds. In answer to questions upon re-direct examination, he said that Lancaster told him that he gave the deeds to Mrs. Lancaster, and on re-cross-examination he said: "Yes, sir; I think he said he had given her the deeds. I am clear on that. I think he said he gave her the deeds." In view of the fact that some sixteen years had intervened between the date of the conversation and the time when it was detailed in court; in view of the uncertainty of the witness in regard to the statement, which clearly appears from his examination; in view of the fact that the supposed statement is inconsistent with so many of the surrounding circumstances of the case, and is not corroborated by other evidence, our conclusion is, that the testimony respecting said alleged statement of John Lancaster, deceased, should not be given controlling effect, and be permitted to deprive the heirs of said deceased of their inheritance.

14—140 ILL.

We are of opinion, from the evidence in the record, that the two deeds in controversy were not either delivered to or accepted by appellant, either in the lifetime of Francis W. Lancaster, the grantor therein, or in that of John Lancaster, the real and equitable owner of the lands claimed to have been conveyed; and we are also of opinion that said deeds, for want of a valid delivery and acceptance thereof, remained, after they were made, under the control and dominion of Francis W. Lancaster and John Lancaster, and were revoked by them by the execution, delivery, acceptance and recording of the quitclaim deed of March, 1876. If these conclusions are correct, it then follows that the deeds exhibited by appellant never became effective to invest her with title.

In this view of the case the decree of the circuit court must be affirmed.

*Decree affirmed.*