JACOB FITZSIMMONS

*v.*

BENJAMIN ALLEN's Administrator and Heirs.

1. STATUTE OF FRAUDS—*parol sale of land.* Where, upon a sale of lands, the consideration was fully paid and the possession given to the purchaser, this is a sufficient performance to take the case out of the statute of frauds, although there was no written evidence of the sale.

2. Hence, where A and F made an exchange of lands, each going at once into the possession of the tract he traded for, A receiving title papers for his land, and F receiving no title papers for his land, a court of equity would compel A to make a transfer of the title to F.

3. POSSESSION—*effect of when wrongful.* In such a case, where, after F had been eighteen months in possession, he left the country for several years, the fact that, after his departure, A once more obtained possession of the land, by inducing the family of F to leave it, did not change the right of F to have a conveyance of the land made to him on his return.

4. RECEIPT—*effect of when general.* In such a case, where A took possession of $500 worth of the personal property of F as well as of the land, and two years afterward there was a general receipt from F to A for $240, "in full of all demands and claims" to date, such a receipt was held to apply only to the claim growing out of the personal property.

5. RECEIPT—*required to release an equitable title.* In such a case, the receipt being in these words: "September 17th, 1857. Received of Benjamin Allen two hundred and forty dollars, in full of all demands and claims due Jacob Fitzsimmons up to this date. (Signed) Charles Fitzsimmons, attorney for Jacob Fitzsimmons." *Held,* that its language was not appropriate to the purpose of releasing a complete equitable title to a tract of land, and there was a personal indebtedness, to which it did properly apply.

6. HEIRS—*may be compelled to convey and to account.* And, where a bill was filed to compel a conveyance, upon the facts above recited, and praying an account of rents and profits, pending which bill the vendor, A died, his heirs were made parties, and were compelled to convey the land, and account for the rents and profits from the time their ancestor last went into possession.

WRIT OF ERROR to the Circuit Court of Shelby county; the Hon. CHARLES EMERSON, Judge, presiding.

The facts in this case fully appear in the opinion of the Court.

Messrs. HENRY & READ, for the plaintiff in error.

Messrs. MOULTON & CHAFEE and Mr. A. J. GALLAGHER, for the defendants in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a bill in chancery, brought by Fitzsimmons against Benjamin Allen, to compel the conveyance of eighty acres of land. Allen died pending the suit, and his administrator and heirs were brought in by supplemental bill. The case was brought to a hearing upon the pleadings and proofs, and the Circuit Court dismissed the bill. The complainants prosecute a writ of error.

Although the evidence is not free from contradiction, we consider the following facts sufficiently established: Fitzsimmons had bought from some person whose name is not given, one hundred and eighty acres of land, and held a bond for a deed upon which there was due a balance of from $200 to $300. He applied to one Johnson for a loan of money. He was already in debt to Johnson, and it was agreed between them that Johnson should advance what was still due on the land, and take a deed in his own name, but should convey to Fitzsimmons whenever he should pay his total indebtedness to Johnson, amounting to about $980. In the fall of 1855, Fitzsimmons made a bargain with Allen, by which the latter was to give Fitzsimmons the eighty acres of land in contro-versy in this suit, and to take in exchange the one hundred and eighty acres, paying Johnson the amount due him. This was done. Allen received a bond for a deed from Johnson, giving him his notes in return, and Fitzsimmons surrendered to Allen the possession of the one hundred and eighty acres, and received possession from Allen of the eighty acres in con-troversy. The justice of the peace who attended to the business for the parties, testifies, that, after the other instruments were executed, Allen offered to give Fitzsimmons a deed for the eighty acres while they were all together, but the latter replied that he had not time then to attend to it. Allen helped Fitz-

simmons to move upon the land. He remained in possession almost eighteen months, and then left home and was absent some four or five years. After he left, Allen took possession of all his personal property, exceeding in value $500, and also took possession of the eighty acres, inducing the family of Fitzsimmons to leave, as some of the witnesses testify, by threats.

The defendants rely upon a receipt executed in 1857, by Charles Fitzsimmons in the name of the complainant, from whom he had an instrument purporting to be a power of attorney, and since lost. The receipt is as follows:

" September 17th, 1857. Received of Benjamin Allen, two hundred and forty dollars in full of all demands and claims due Jacob Fitzsimmons up to this date.

"CHARLES FITZSIMMONS,
"Attorney for Jacob Fitzsimmons."

The question arising upon this receipt is, whether it was designed to be merely a receipt for the demands of Fitzsimmons, growing out of the seizure, by Allen, of his personal property, or whether it was also intended to release Allen from Fitzsimmons' claim to the land. As it is relied upon by the defendants to defeat a claim which, independently of this receipt, is exceedingly clear, it is incumbent on the defendants to show with reasonable certainty that the receipt was given in discharge of this claim, and this, we think, the evidence fails to do. The receipt, it is true, is general in its terms, but its language is not appropriate to the purpose of releasing a complete equitable title to a tract of land, and there was a personal indebtedness from Allen to the complainant, to which its language properly applied. Moreover, this indebtedness amounted to at least five hundred dollars. The land was worth ten dollars per acre, and if the receipt was designed to release Fitzsimmons' title, he would be giving up claims to the amount of $1,300 in consideration of the payment of $240. No reason whatever is shown for this sacrifice, and such a circumstance is so extremely improbable as to require reasonably

clear proof before it is entitled to belief. It is sought to apply the receipt to the land by the evidence of two or three witnesses who were present when the receipt was given. But it is evidence in regard to a conversation which had occurred eight years before, and is extremely vague and unsatisfactory, as such evidence generally is. Besides it is shown by the evidence of two witnesses that Allen, in 1861, four years after the receipt was given, admitted that he offered Fitzsimmons, after his return, "seventy-nine acres of land, a beast and a cow," in settlement, and that the offer was declined.

It is also insisted by the defendants, that the case falls within the statute of frauds. But the consideration for the land was fully paid and possession given to the purchaser. This is a sufficient performance to take the case out of the statute.

We are of opinion that there should be a decree for the conveyance of the eighty acres of land, and for an account of the rents and profits since the commencement of the suit.

*Reversed and remanded.*