## H. FREDERICK TEMPLE

*v.*

## JAMES B. JOHNSON.

1. STATUTE OF FRAUDS—*effect of full payment, alone.* Full payment of the purchase money for real estate verbally agreed to be conveyed, is not of itself sufficient to take the agreement out of the Statute of Frauds. There must also be possession taken of the property.

2. SAME—*subsequent act, whether a recognition of agreement.* Where a party owning lots authorizes another to sell the same to pay a judgment against him, and no sale can be made, and such other person sells his own lots, and pays the judgment, and the first party afterwards conveys a portion of the premises, for the expressed consideration of $1, and for assistance rendered and money advanced in settling the judgment, this will not be sufficient to take a verbal agreement to convey several lots to the party settling the judgment, out of the Statute of Frauds.

3. SPECIFIC PERFORMANCE—*hard and unreasonable contract will not be enforced in equity.* Where a party has already received a liberal compensation for the use of his money for a short time, a contract to convey to him certain lots, for the advance made by him, will not be specifically enforced, as to do so would be inequitable, if not oppressive.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. GEORGE HERBERT, for the appellant.

Messrs. PADDOCK & IDE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that Margaret Johnson, who has since intermarried with one Martin, owning a number of lots in the city of Chicago, conveyed six of these lots to William Bayland, to secure a debt which her father owed him; that, afterwards, her father died, and, in 1866, Bayland recovered a judgment against her for $2800, the amount of the debt she had made the deed to secure. It seems to be conceded that she agreed with her brother-in-law, John F. Temple, that he might sell these six lots and eight others, if he could find a purchaser who would give a sum sufficient to pay the judgment. The arrangement was verbal.

Temple made efforts, and, in the fall of 1869, found one Mulvy, a land speculator, who was willing to satisfy the judgment for the lots, but, it being found that a part of them were incumbered, further negotiations were abandoned, and the sale fell through. Afterwards, he proposed to the mother of Margaret that they sell some of the lots he and her mother owned jointly, and raise the money and pay the judgment. This was assented to by both Margaret and her mother, and at this point the principal question of fact arises. Temple claims that it was understood that he and the mother were to receive the fourteen lots that had been offered to Mulvy, as a consideration for the lots they should convey, and he swears that he so made the proposition, and that it was assented to by Margaret and her mother; but Margaret swears that he and her mother were to sell a portion of their lots, raise the money, pay the judgment, and to be reimbursed in the same sub-division, and her brother James B., who swears he was present, fully corroborates her in her statements as to the agreement. The mother has since died, and her evidence was not had. Mrs. Temple, the sister of Margaret, swears to the arrangement under which Mulvy proposed to purchase, and that James B. recognized the arrangement that her husband was to have the same property offered to Mulvy, if he

sold his and her mother's lots to pay the judgment, but she does not state that Margaret ever assented to such an arrangement.

In March, 1867, Temple and his mother-in-law sold seven of their lots, as agreed, and realized $3000 net, but this money was not paid on the Bayland judgment until in February, 1868, some eleven months after the sale. Afterwards, Temple procured a deed from Bayland for the six lots conveyed to him by Margaret, to secure the debt on which the judgment was rendered, and, by arrangement of parties, he sold these six lots for $16,200, one-half of which he retained as his own. He, before this suit was brought, released all of his interest in the eight other lots to his son, the appellant, that his wife might become a competent witness.

Margaret subsequently conveyed lot number 30, being one of the eight lots, to James B. Johnson and appellant, in consideration of $1, and assistance rendered and moneys advanced in paying a judgment against her in the Superior Court; and she likewise conveyed lot 31 to James B., which is claimed to be one of the lots Temple and his mother-in-law were to receive, one-half of which appellant claims by the release from his father.

The court below, after hearing the evidence under the bill, cross-bill, answers and replications, decreed a partition of the lots named in the original bill, and of that no complaint is made, but dismissed the cross-bill filed by H. F. Temple, and he appeals to this court.

He urges that the court below erred in refusing to allot to him, on partition, one-half of the unsold portion of the fourteen lots he claims that his father and Mrs. Johnson were to receive for the payment of the judgment, except lot 30, and in not decreeing to him one-half of the money received by Margaret on sales of a part of them before the suit was brought. Such a decree is resisted on the ground that no such contract was ever made, but if such an agreement is proved, then the Statute of Frauds was set up and is relied

upon, and that it would be inequitable and unjust to enforce the performance of such an agreement.

There could be no pretense in this case that there was any memorandum or note of the agreement, in writing, signed by Mrs. Martin or by any person by her authorized; nor is it claimed that Temple or appellant ever took possession under the agreement, or made lasting and valuable improvements on the property. It is only claimed that the purchase money was paid in full. Hence, the statute has not been observed, nor has anything been done to take the case out of the statute.

It has been repeatedly held by this court that in case of a parol purchase of lands, where the purchase money has been paid, possession surrendered to the purchaser, and he enters under the contract, and has made lasting and valuable improvements, a specific performance will be enforced. *Mason* v. *Bair*, 33 Ill. 195; *Keys* v. *Test*, ib. 316. And in the case of *Fitzsimmons* v. *Allen*, 39 Ill. 440, it was held that the payment in full of the purchase money, and the possession of the property purchased, took the case out of the Statute of Frauds. This is the greatest relaxation of the requirements of the statute that has been made by this court, nor do we incline to go any farther in that direction.

Whilst the decisions of the various courts are not entirely uniform, the general rule seems to be as stated by Story, in his work on Equitable Jurisprudence, section 761, that the general ground upon which courts proceed to execute parol contracts for part performance, as the governing rule, is, "that nothing is to be considered as a part performance which does not put the party into a situation which is a fraud upon him, unless the agreement is fully performed;" and he says that, although formerly a payment of the purchase money was considered a sufficient part performance to take the case out of the statute, the rule is now otherwise settled, and in this he is fully sustained by the adjudged cases, both in the British and American courts.

Then, even if the contract claimed in this case was made, still there is no pretense that anything more was done than the payment of the purchase money. Temple did not enter into possession under the agreement, nor did he make any improvements on the lands. No act was done in carrying out the agreement that amounted to, or operated as, a fraud upon Temple or appellant, beyond receiving the benefit of the purchase money, and we have seen that is not held to be such a fraud as to take the case out of the operation of the statute. We can see nothing in the evidence to prevent the statute from being successfully interposed as a bar to the relief sought.

Nor did Margaret, by making the deed to James B. Johnson and appellant, refer to or recognize the agreement. She, it is true, expresses a part of the consideration to have been for assistance rendered and money advanced in settling a judgment. She does not allude, even, to the agreement claimed to have been made. She does not say that she had sold even that or any other lot by a prior agreement. In reading the deed, a person would naturally suppose that the conveyance was a full satisfaction of the claim, as she does not say it was in part satisfaction, or that a part of the claim for assistance and the money advanced was the consideration. This statement in the deed falls far short of a recognition of the parol agreement contended for by appellant.

Again, even if the Statute of Frauds had not been set up and relied upon, we regard the proof as insufficient to establish the contract. There is no doubt that Margaret consented to sell, and authorized Temple to sell, the fourteen lots, for money to pay the judgment, and that she approved of such a sale to Mulvy, when it was supposed he had become a purchaser; but the arrangement that was finally carried out, was proposed and entered into months afterwards, and Margaret and James B. both positively deny that Temple was to have the same that Mulvy was to get, and that he was to be reimbursed by other lots in the same sub-division. On the other

hand, Temple swears that it was spoken of and assented to, at the time, that he and his mother-in-law should, if they paid the judgment, receive the fourteen lots, instead of Mulvy, and, in most of his testimony, he is corroborated by that of his wife, but she does not swear that she heard such an agreement made, nor does she state that Margaret ever told her that such was the agreement, but even if she had, we regard the evidence of the defense as more satisfactory, for various reasons, but especially as Temple did not state the agreement on his first or second examination. This greatly impairs the weight of his evidence.

It appears that Temple has received $8100 on the sale of the six lots pledged to Bayland, and appellant an undivided half of lot 30 to reimburse him for advancing, at most, $1600, a short time only before he was thus reimbursed. He, at least, can not say that he did not receive a liberal compensation for the use of his money. We are not prepared to hold that it would be equitable to decree a conveyance of any more of the lots, or any further compensation, even if the contract had been satisfactorily proved, and a sufficient part performance shown to obviate the bar of the statute. If not oppression to do so, it would be hard and unreasonable, when such large gains had been made out of the transaction by Temple and appellant.

A careful consideration of the entire record fails to disclose any error for which the decree should be reversed, and it must be affirmed.

*Decree affirmed.*