JOHN MOORE

*v.*

MARY E. FLYNN *et al.*

*Filed at Mt. Vernon November 5, 1890.*

1. HOMESTEAD—*abandonment*—*so as to let in a judgment lien*—*sale and transfer of the homestead premises*—*and delivery of the possession.* Under our statute one may sell his or her homestead without an existing judgment thereby becoming a lien thereon, even when such sale is made during a temporary absence from the premises.

2. A widow, against whom there was a judgment, occupied a tract of land as her homestead. On her subsequent marriage she leased the premises for one year, and she and her husband rented a house in a town about five or six miles distant, she intending to return to her homestead when the lease should expire, but before the end of the term she concluded to and did sell and convey the homestead premises: *Held,* that this was not an abandonment of the homestead, and the judgment did not thereby become a lien on the land.

3. A surrender of possession pursuant to a conveyance of the property is not an abandonment of the estate of homestead, but is, by virtue of the statute, an appropriate mode of transferring that estate.

4. The holder of an estate of homestead under an unrecorded deed, while temporarily absent from the premises, bargained and sold the same to another, and on payment of the purchase money put the purchaser in possession, delivering to him the unrecorded title papers: *Held,* that this was sufficient to work a conveyance of the equitable title without the lien of a judgment against the vendor attaching.

5. SAME—*form of release*—*in case possession is or is not surrendered.* On the conveyance of homestead premises, it is not essential that the form of release of the homestead right, as prescribed in the statute, shall be adopted, in case possession is given pursuant to the deed.

6. NOTICE—*by possession of land.* The possession of land is notice to subsequent judgment creditors of a vendor, of the equitable rights of the party in possession.

7. FRAUDULENT CONVEYANCE—*sale and conveyance of a homestead estate.* A judgment creditor can not have a conveyance of his debtor's homestead estate set aside as fraudulent, for the reason it deprives him of no existing right. If the creditor can not subject the property to the payment of his debt while in the debtor's hands, he can not avoid a sale of it by his debtor as fraudulent.

8. Delivery of deed—*and acceptance—presumption.* To render a deed operative to pass title, there must be not only a delivery of the deed by the grantor, but also an acceptance by the grantee. The acceptance by the grantee is as essential as the delivery by the grantor.

9. Where the acceptance of a deed is not proven, and the facts do not justify the presumption of law that the grantee has accepted, the title will not pass.

10. Where a grantee who is under no disability is aware of the conveyance to him, and does not dissent, and the conveyance is positively beneficial to him or her, acceptance will be presumed ; but no such presumption will arise so long as the grantee is ignorant of the conveyance.

Appeal from the Circuit Court of Wayne county; the Hon. C. C. Boggs, Judge, presiding.

Mr. Edwin Beecher, for the appellant.

Mr. J. R. Creighton, and Messrs. Hanna & Hanna, for the appellees.

Mr. Justice Baker delivered the opinion of the Court:

John Moore, appellant herein, exhibited his bill for the purpose of removing clouds from the title to twenty acres of land in Wayne county, and for other relief. In March, 1883, he had recovered in the circuit court of said county a judgment for $120, against Mary E. Flynn, upon which execution issued within one year. On December 8, 1885, an *alias* execution issued thereon, which was levied on said land, and on January 6, 1886, he bought said land at the sheriff's sale. There having been no redemption from such sale, a sheriff's deed was executed to him on April 4, 1887. In May of this latter year, through collusion with the tenant of some of the appellees, who were in possession through such tenant and claimed adversely to his title, appellant obtained possession of the premises. He was subsequently ousted by a forcible entry and detainer proceeding, but while in temporary occupancy of the land he instituted this equity suit. Waiving the

question of his right, under the circumstances, to file the bill, we will pass upon the merits of the controversy.

In 1877, Mary E. Flynn (then Mary E. Schofield,) was a widow, and bought the north ten acres of the land from one Trousdale, and received from him a deed for the same. She at once went into possession of the ten acres, and occupied the same, with her children, as a homestead, until May, 1883, when she moved with her family to Fairfield, some eight miles distant. She had, prior to that, married one Flynn, a bridge carpenter, and the object in view when they moved to Fairfield was that the husband might get employment on the railroad. When she left the premises she rented them for a year, and intended to return to her homestead at the end of the year.

In the winter of 1883-84, and prior to March, 1884, Mrs. Eliza Leet, mother of Mrs. Flynn, purchased from Trousdale the south ten acres of the land in question, and paid for it with her own money. Trousdale delivered to her a deed therefor, but the evidence is conflicting whether Mary E. Flynn was named therein as grantee, or "Mary Flynn's children" (without naming them) were the grantees. We think the weight of the evidence shows the former was the case.

In March, 1884, Mrs. Leet bought from Mrs. Flynn the north ten acres, and paid her $140 therefor, and took immediate possession and control of the same. Mrs. Flynn executed no deed to her mother, but at the time of the sale delivered to her the deed that she had received from Trousdale. That deed had not been recorded, and it seems, from the evidence, that the idea of the parties was, that as the title of record was still in Trousdale, the surrender to him of his deed to Mrs. Flynn, and the execution of a new deed by him, would convey the land to the grantee or grantees in such new deed, and save expense in recorder's fees. So, also, the deed for the south ten acres, from Trousdale to Mrs. Flynn or "Mary Flynn's children," was never placed upon record, but on December 20, 1885, Mrs. Leet surrendered to Trousdale both

that deed and the deed for the north ten acres, from Trousdale to Mrs. Flynn, which had been turned over to her at the time she bought the last mentioned ten acres from Mrs. Flynn, in March, 1884, and they were destroyed, and a deed of conveyance was thereupon made by Trousdale for the whole twenty acres, to William A. Schofield, Lawrence W. Schofield and Charles R. Flynn, minor children of Mrs. Flynn and grandchildren of Mrs. Leet, which was at once duly recorded. The claim of Mrs. Leet is, that she bought the south ten acres with intention of giving it to her grandchildren above mentioned, and that if Mary E. Flynn was made grantee therein, it was a mistake on the part of the scrivener, and contrary to her directions.

In respect to the north ten acres of the land, it is claimed there was an abandonment of the homestead therein, and that thereupon the lien of the judgment of appellant attached. It is very plain, from the evidence, that said land was the homestead estate of Mrs. Flynn from 1877 until May, 1883, and that she then left her home there for a merely temporary purpose, and with the intention of returning to it when the lease thereon should expire, at the end of a year. She moved to Fairfield, but lived in a rented house. The fair conclusion from the testimony, considered as a whole, is, that in February, 1884, she made up her mind that if she could sell her place she would remain in Fairfield and not return to her old home. There is no question but that under our statute one may sell a homestead without an existing judgment thereby becoming a lien thereon, even when such sale is made during a temporary absence therefrom. Yet such person, prior to the execution and delivery of the deed therefor to the purchaser, must necessarily come to the conclusion to sell, and hence not to return to the homestead. The statute provides, in express terms, that when a homestead is conveyed by the owner thereof, such conveyance shall not subject the premises to any lien or incumbrance to which it would not have been subject in the

hands of such owner. It would be destructive of the true intent and purpose of the statute to say, that the mere formation of an intention to sell, by the holder of a homestead right, during a temporary absence from such homestead, is, in and of itself, an abandonment of the homestead. It has been the uniform doctrine of this court, that the homestead laws are remedial, and should receive a liberal construction, and such as will advance the objects contemplated by the legislature in enacting them. We think that under the circumstances of this case there was no abandonment of the homestead.

It is also insisted that the law requires a certain form for the release of the homestead, and that no other form can be substituted for the required one. The propositions thus stated have application only to a case when possession is not given pursuant to the conveyance. A surrender of possession pursuant to a conveyance of the property is not an abandonment of the estate of homestead, but is, by virtue of the statute, an appropriate mode of transferring that estate. (*Eldridge* v. *Pierce et al.* 90 Ill. 474.) Here, possession was given at the time of the sale, and although no conveyance of the legal title was made, yet as the purchase money was fully paid and possession delivered, and the vendor's unrecorded title papers delivered to the vendee, this was sufficient to work a conveyance of the equitable title, and was a sufficient performance to take the sale out of the Statute of Frauds, even if such latter question could and did here arise. (*Fitzsimmons* v. *Allen's Admr.* 39 Ill. 440; *Temple* v. *Johnson,* 71 id. 13.) Besides this, the land was not subject to levy and sale for the payment of appellant's judgment at the time of the purchase by Mrs. Leet, and her actual possession and her equities were long prior, in point of time, to any right acquired by appellant; and of her possession and of her equities, and of those of her grandchildren, for whom she intended the land, appellant had both constructive and actual notice before he bought the land at sheriff's sale.

It is suggested, however, that Mrs. Leet bought the land for the purpose of preventing the judgment from becoming a lien thereon. Even if this be so, yet her action in purchasing deprived appellant of no interest which he had in the land, and was in fraud of no right which was vested in him. Not only was the property, while in the hands of Mrs. Flynn, exempt from execution and from the lien of the judgment, but it was the intent and policy of the statute that upon her disposing of the estate the proceeds thereof should also be so exempt.

In respect to the south ten acres, we must assume that the first deed therefor, made by Trousdale, designated Mary E. Flynn as grantee. That deed, however, was not delivered to Mrs. Flynn, but to Mrs. Leet, who bought the land and paid for it entirely with her own means. Mrs. Leet at once took possession and control of it, as she claims, for and on behalf of her grandchildren. Mrs. Flynn had never had possession, but has, ever since the execution of said deed therefor, contin-ued to live at Fairfield with her husband. All the taxes as-sessed on the land have been, continuously, paid by Mrs. Leet. The evidence is, that there was no arrangement between Mrs. Leet and Mrs. Flynn by which the former bought the land for the latter, and that the deed was never given to the latter, nor in her hands, nor seen by her, and that she had no knowledge such deed had been made, and, as we have already seen, the deed was never placed upon record. Did the title pass by this deed to Mrs. Flynn?

To render a deed operative to pass title there must be not only a delivery of the deed by the grantor, but also an accept-ance thereof by the grantee. The acceptance of the convey-ance by the grantee is as essential as the delivery by the grantor, and where the acceptance is not proven, and the facts do not justify the presumption of law that the grantee has accepted, the title does not pass. (5 Am. and Eng. Ency. of Law, p. 446, and cases cited; *Wiggins* v. *Lusk*, 12 Ill. 132;

*Kingsbury* v. *Burnside et al.* 58 id. 310 ; *Dale et al.* v. *Lincoln*, 62 id. 22.) In respect to a grantee who is not under legal disability, the rule is, that when such grantee is aware of the conveyance, and does not dissent, and the conveyance is positively beneficial to him or her, acceptance will be presumed, but that no such presumption will arise so long as the grantee is ignorant of the conveyance. (5 Am. and Eng. Ency. of Law, p. 444, and authorities there cited.) Under the evidence, as we understand it, we are unable to arrive at the conclusion that the title to the south half of the land in controversy was, by the first deed therefor executed by Trousdale, vested in Mrs. Flynn.

.We think the circuit court properly decided that there was no equity in appellant's bill of complaint, and that there was no error in dismissing the same.

*Decree affirmed.*