(No. 13457.—Reversed and remanded.)

JAMES C. MITCHELL, Appellant, *vs.* CHARLES CLEM *et al.* Appellees.

*Opinion filed October 23, 1920—Rehearing denied Dec. 10, 1920.*

1. PLEADING—*answer should set forth facts claimed as a defense.* An answer in equity should set forth the facts claimed as a defense, so that the complainant may question their legal sufficiency or take issue on the answer by amending his bill and disputing the facts, and hence a defendant cannot avail himself of any matter of defense not stated in his answer, even though it should appear in evidence.

2. CONTRACTS—*what does not render an agreement illegal.* An agreement to marry when one of the parties has become qualified to marry by the expiration of the statutory period following her

divorce is legal and is not rendered illegal by the fact that the parties·thereafter contracted a void marriage in another State before they were legally married.

3. DEEDS—*intention to pass title is essential to valid delivery.* A deed takes effect from delivery, and to constitute a valid delivery it must clearly appear that it was the intention that the deed should pass title at the time it was delivered.

4. SAME—*presumption of delivery of deed arising from its possession by grantee is not conclusive.* The presumption that a deed has been delivered when it is found in the hands of the grantee is not conclusive but the inquiry in such case is as to the intention of the parties at the time the deed was handed to the grantee, as it may have been intended as a testamentary disposition or for other reasons was not intended to operate as a present conveyance.

5. SAME—*when recording of a deed does not vest title.* Where the grantee accepts possession of a deed merely as security for the performance by the grantor of his promise of marriage and without any intention of claiming title, the fact that the deed is surreptitiously taken from her possession and recorded does not vest title in her.

6. SAME—*intention at time of delivery may be shown by parol evidence.* If a deed has taken effect as a conveyance by delivery it is not competent to control or alter its effect by parol evidence, but it is competent to show that a deed, although in the hands of the grantee, has never been delivered but something else was to have been done before it should take effect.

7. SAME—*acceptance of deed is essential to a delivery.* It is essential to the delivery of a deed that there be an acceptance by the grantee as a present conveyance of title.

DUNN, CARTER and DUNCAN, JJ., dissenting.

APPEAL from the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding.

LEFORGEE, BLACK & SAMUELS, for appellant.

REDMON, HOGAN & REDMON, and McDAVID, MONROE & HERSHEY, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, James C. Mitchell, made a deed of property in Decatur on December 16, 1913, to Naomi Clem, whom he afterward married, and she died intestate on

March 24, 1916, leaving as her heir-at-law Minnie Clem, her daughter by a previous marriage with the appellee Charles Clem, from whom she had obtained a divorce. Minnie Clem was afterward married to the appellee Tyner Stockwell, and she died leaving as her heirs-at-law her husband, Tyner Stockwell, and her father, Charles Clem, the divorced husband. After the death of Minnie Stockwell, which occurred on February 20, 1918, the appellant filed his bill in this case against the appellees, praying for the removal of the deed as a cloud upon his title, alleging that the deed was made on an express understanding and agreement that the same was not to be effective as a conveyance nor to be recorded except in the event that he failed or refused to carry out an agreement to marry the grantee in the summer of 1915; that the deed was surreptitiously taken and filed for record without the knowledge or consent and against the wishes of himself and the grantee, and that he performed his agreement by marrying the grantee on August 9, 1915. The appellee Charles Clem answered, denying the agreement set forth in the bill and alleging that the deed was made and delivered as a gift of the property described therein to Naomi Clem as the intended wife of the appellant, and that she caused the deed to be recorded. The appellee Tyner Stockwell answered, also denying the alleged agreement and averring that the deed was delivered conditionally to the grantee, and he also filed a cross-bill, alleging that the deed was effective as a conveyance; that the grantee therein died intestate, leaving the appellant, her husband, surviving her, and her daughter, Minnie Clem, as her only heir-at-law; that Minnie Clem became the wife of the complainant in the cross-bill and died leaving him and her father, Charles Clem, her heirs-at-law. He prayed for partition. The cross-bill was answered and the issues referred to the master in chancery, who took the evidence and reported that the appellant and Naomi Clem, his intended wife, entered into an illegal and void marriage

contract; that the deed was made in contemplation of such contract and the appellant had no standing in a court of equity to have the deed set aside, and that the deed was delivered and invested Naomi Clem with the title. He recommended the reimbursement of the appellant for improvements of the premises made in the lifetime of his wife and the assignment of dower and homestead rights in the premises and partition as prayed in the cross-bill. The cause was heard on exceptions of each of the parties, and the chancellor overruled the exceptions of the appellant and sustained exceptions of Charles Clem as to reimbursement of the appellant, and entered a decree dismissing the bill for want of equity and granting the relief prayed for in the cross-bill. Homestead and dower were awarded to appellant, and subject to the same the premises were to be partitioned between the appellees, as owners of the premises in fee.

The facts proved are as follows: James C. Mitchell occupied an office in Decatur, and W. W. Connard, who had an adjoining office, was called in as a witness to an agreement between Mitchell and Naomi Clem, who had obtained a divorce in the circuit court of Cook county from Charles Clem about sixty days before that time. Mitchell had the deed and stated that it was made to secure Mrs. Clem that he would marry her when the proper time came when she would have a legal right to be married, and in case he did as he agreed she was to return the deed to him; that he was giving her the deed, and she agreed not to record it except in case of his death before the marriage. She said that Mitchell need never be afraid of her having the deed recorded as all she wanted of him was to be square with her, to which he replied that that was what he was doing it for; that he expected the deed to be returned, and she said she would not record it. She afterward told the witness that she only wanted the deed for her protection. Mrs. Clem was working at that time for J. F. Cassell, a beer agent for a Terre Haute concern, and she deposited

the deed in his safe for safekeeping, to remain there until she and Mitchell were married, when she was to return it to him. Cassell was hostile to Mitchell and had frequently been seen spying upon Mitchell's office, and, when detected, hiding behind the elevator. Cassell followed Mrs. Clem to her laundress and said he hunted for the deed in the safe and could not find it, and Mrs. Clem told him to leave the deed alone,—that he had nothing to do with it; that she was going to marry Mitchell again and the deed was to go back to him; that the deed was never to be recorded and she was to return it. She told the laundress that she was working for Cassell and had put the deed in his safe until after Mitchell and she were married, when she was to return it to Mitchell, and that Cassell had offered to take it and have it recorded. The deed was recorded on December 27, 1913, and Mrs. Clem told the witness to the agreement that it was Cassell's fault that the deed had been recorded; that she had not given him any authority to record it and did not know of it until it had been done; that she and Cassell had had some trouble about it and she had lost her job, and that the understanding from the first was that Mitchell was to get the deed back after she married him. On December 29, 1913, Mitchell and Mrs. Clem were married in St. Louis, Missouri. This marriage was proved by a certificate of a justice of the peace, which was not certified as required by the statute and was objected to and was not competent, but the objection was general and did not specify the ground for objection now insisted upon, which was necessary. Mitchell had full possession of the premises, paid the taxes and made considerable improvements, and the parties occupied them as a homestead until the death of the wife. Neither she in her lifetime nor her daughter after her death claimed or exercised any rights of ownership, and the wife never repudiated her agreement or sought to take any advantage of the fact that the deed had been recorded.

The contract was made without fraud, misrepresentation or oppression by parties capable of contracting, and the only condition was that the appellant should perform his agreement and enter into a lawful marriage relation with Naomi Clem when she could lawfully contract such a marriage. The contract was free from any infirmity or any illegality whatever, unless the real consideration, not expressed, was that Naomi Clem should enter into an unlawful relation with the appellant by the subsequent marriage on December 29, 1913, which was void, (*Wilson* v. *Cook,* 256 Ill. 460,) and that the contract was not what its language purported. Taking the contract as it was stated between the parties when made and as afterward performed by the lawful marriage, every principle of natural justice and every equitable consideration is on the side of the appellant. He performed his contract in good faith and its validity was never questioned by the other party to it but its validity was constantly affirmed by her. The only claim of the appellees is that the legal title was vested in Naomi Clem and has descended by operation of law through her deceased daughter to them, one of them being the husband of the deceased daughter and the other the divorced husband of Naomi Clem, who would probably be about the last person selected by her to have any interest in the premises. The bill was dismissed for want of equity on the ground that the contract was illegal, but the appellees in their several answers did not allege any illegality of the contract as a defense to the bill, one of them alleging that the conveyance was a gift to the intended wife, and the other that it was delivered conditionally. It is necessary, in equity, that an answer should set forth the facts claimed as a defense, so that the complainant may question the legal sufficiency of the facts as a defense or take issue on the answer by amending his bill and setting up the alleged facts as pretended defenses and disputing them. A defendant cannot avail himself of any matter of defense not stated in

his answer, even though it should appear in the evidence. (*Kellogg* v. *Moore,* 97 Ill. 282; *Crone* v. *Crone,* 180 id. 599; *Higgins* v. *Higgins,* 219 id. 146; *Millard* v. *Millard,* 221 id. 86.) The appellees had no personal right to a decree dismissing the appellant's bill on the ground that the contract was illegal, and the bill could only be dismissed if the chancellor found that the public interest and the rules of equity· demanded such a decree.

It is a principle of equity that where persons engage in an unlawful transaction and one gets the advantage of the other the court will not interfere to make him restore what he has obtained. (*Miller* v. *Davidson,* 3 Gilm. 518.) That rule does not apply here, because the grantee never claimed the premises or any rights under the deed except in accordance with the contract and protested that it had been recorded against her will. If there was any illegality about the contract it would be beyond the jurisdiction of a court of equity to prevent the performance of it, and the parties could perform it if they saw fit, without interference from such a court. There is no reason to suppose that Mrs. Mitchell would not have made the record clear by a quitclaim deed at any time, and it was only through neglect that the record title remained as it was.

Not only was the bill dismissed for want of equity, but relief was given on the cross-bill because of the supposed illegality of the consideration, thereby enforcing rights claimed under an alleged unlawful and illegal transaction. The appellant was, and for many years had been, in possession of the property claiming to own it, and by the decree he was divested of his claim of right and title.

Another application of the rule of equity is, that where a contract is illegal or against public policy a court of equity will not, at the suit of one of the parties who participates in the illegal or immoral intent, either compel the execution of the agreement or set it aside after it has been executed, because to give relief in such a case would injure and

counteract public morals. (*St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers,* 71 Ill. 592; *Craft* v. *McConoughy,* 79 id. 346.) This application of the rule is not in the interest of any party to the illegal or immoral transaction but in the public interest, and so far as dismissing the bill is concerned, the chancellor might do that and leave the parties where he found them without the defense being set up in an answer. In this case the contract was by its terms not contrary to morals nor illegal in any respect but was to secure the performance of an agreement for a legal marriage. Nothing was said and no agreement was made about the marriage which afterward took place in St. Louis or any other marriage before one could be lawfully celebrated, and whether Mrs. Clem would have taken part in that marriage if she had not been assured of a lawful marriage in the future, when the statutory time limit had expired, is a matter of mere conjecture.

Aside from these questions, which are naturally suggested by the record, there is a conclusive reason why the decree giving the appellees the title to the premises was wrong, in the fact that Mrs. Mitchell, from whom they claimed title by inheritance, never had the title. A deed takes effect from delivery, and to constitute a valid delivery it must clearly appear that it was the intention that the deed should pass title at the time. The deed was handed to the grantee when the contract was made, and when a deed is found in the hands of the grantee there is a presumption that it has been delivered, (*Inman* v. *Swearingen,* 198 Ill. 437; *Schroeder* v. *Smith,* 249 id. 574; *O'Brien* v. *O'Brien,* 285 id. 570;) but that presumption is not conclusive and may be rebutted by proof of a different intention. The mere placing of a deed in the hands of the grantee does not, of itself, necessarily constitute a delivery, but the inquiry in such a case is as to the intention of the parties at the time, and that intention, when ascertained, will govern. A deed cannot be delivered to the

grantee in escrow but such delivery must be to a stranger, (Sheppard's Touchstone, 58; *Stevenson v. Crapnell,* 114 Ill. 19;) which means that an absolute delivery sufficient to vest title in the grantee cannot be made in that way, but there are numerous decisions that a deed, although delivered to the grantee, may have been intended as a testamentary disposition of the property or for other reason was not intended to operate as a present conveyance. If a deed has taken effect as a conveyance by delivery it is not competent to control or alter its effect by parol evidence, but it is competent to show that a deed, although in the hands of the grantee, has never been delivered but something else was to be done before it should take effect. (*Jordan v. Davis,* 108 Ill. 336; *Bovee v. Hinde,* 135 id. 137; *Hayes v. Boylan,* 141 id. 400; *Oliver v. Oliver,* 149 id. 542; *Rountree v. Smith,* 152 id. 493; *Wilson v. Wilson,* 158 id. 567; *Hollenbeck v. Hollenbeck,* 185 id. 101; *Stanley v. White,* 160 id. 605; *Russell v. Mitchell,* 223 id. 438; *Oswald v. Caldwell,* 225 id. 224.) In this case it was not the intention of either of the parties that the deed should take effect as a conveyance when it was handed by the appellant to the grantee, but it was agreed that it should not be effective as a deed unless the appellant should fail or refuse to perform his agreement and marry the grantee when she could lawfully be married, and it was not to be recorded so as to become record evidence of title. The grantee refused to have the deed recorded and told Cassell to let it alone and that he should have nothing to do with it. It was secretly taken by Cassell and filed for record from a malicious desire to injure the appellant. An acceptance by the grantee is essential to a delivery, (*Moore v. Flynn,* 135 Ill. 74; *Dagley v. Black,* 197 id. 53;) and there was no acceptance of the deed as a present conveyance of title. The title to real estate cannot be forced by conveyance upon a person without his consent and against his will. Neither grantor nor grantee intended or understood that the deed conveyed

title when handed to the grantee. No one could acquire title by descent or inheritance from Mrs. Mitchell unless she had been invested with such title, and as she never had the title the decree finding that the appellees were the owners in fee simple of the premises, subject to homestead and dower of the appellant, is contrary to the law.

The decree is reversed and the cause remanded, with directions to dismiss the cross-bill for want of equity and to grant the relief prayed for in the original bill.

*Reversed and remanded, with directions.*

DUNN and DUNCAN, JJ., dissenting:

The manual transfer by the grantor to the grantee of the actual possession of a deed purporting to be an absolute conveyance of real estate without reserving to the grantor the right to recall the instrument or any control over it is a perfect delivery, which vests the title in the grantee immediately in accordance with the terms written in the deed. The rule is not affected by an oral agreement between the grantor and the grantee that the deed shall become effectual as a conveyance only at some time in the future or upon the happening of some future event or upon the performance of some condition, or that the deed shall become ineffectual at some time in the future or upon the happening of some future event or upon the performance of some condition. In order to prevent a deed so delivered from becoming effective at the time of the delivery, or to make it ineffective subsequent to its delivery, the condition, whether precedent or subsequent, must be written in the deed. A deed absolute on its face cannot be delivered conditionally to the grantee. While a few decisions which apparently disregard this rule may be found, the great weight of authority holds that the delivery of a deed absolute on its face to the grantee upon a condition not expressed in the deed is an attempt to deliver the deed in escrow, that no delivery in escrow can be made to the grantee, and that

by such delivery the title passes absolutely. It has been so held in this State in the following cases: *McCann* v. *Atherton,* 106 Ill. 31; *Stevenson* v. *Crapnell,* 114 id. 19; *Weber* v. *Christen,* 121 id. 91; *Baker* v. *Baker,* 159 id. 394; *Ryan* v. *Cooke,* 172 id. 302; *Fletcher* v. *Shepherd,* 174 id. 262; *Clark* v. *Harper,* 215 id. 24; *Blake* v. *Ogden,* 223 id. 204; *Neely* v. *Lewis,* 5 Gilm. 31. In the last case cited the deed was a promissory note under seal. In *McCann* v. *Atherton, supra,* it is said: "The rule of law on this subject is, that a deed, or any other sealed instrument, cannot be delivered to the grantee or obligee himself as an escrow, to take effect upon a condition not appearing on the face of such deed or other instrument. The delivery must be made to a stranger, otherwise the deed or other instrument becomes absolute at law." In *Stevenson* v. *Crapnell, supra,* it is said: "It is the well settled rule of law that there cannot be delivery of a deed to the grantee as an escrow,—that such delivery makes the deed an absolute one to the grantee." That case is not distinguishable in its facts from this one. The grantor, who was about to be married and go to the State of Texas, made a deed to her brother, with the agreement that if she never returned he was to own the land but if she returned from Texas to live he was to give up the land and deed to her and it was to remain her property. Shortly after making the deed she was married and went to Texas and resided there for ten years, when she returned to Illinois to live. It was held that the title passed irrevocably to the grantee. In *Ryan* v. *Cooke, supra,* it is said: "The rule is well settled that if a deed is delivered to the party or his agent, and not to a stranger, it is absolute, and parol evidence of conditions qualifying the delivery is inadmissible." "In case of an actual delivery of a deed by the grantor to the grantee the title will pass, notwithstanding a verbal understanding that it is to take effect only on certain conditions.

This is so because a deed voluntarily placed in the hands of a grantee cannot be treated as an escrow." *Fletcher* v. *Shepherd, supra.*

The cases in which the delivery of the deed into the manual possession of the grantee has been held insufficient to transfer the title have generally been cases such as that of *Hayes* v. *Boylan*, 141 Ill. 400, cited in the majority opinion, in which, in the language of Mr. Justice Scholfield, the writer of the opinion, "no act was done by the grantor intended as a present delivery of the deed, for handing it to Charles Boylan and at the same time telling him to 'take this deed and put it in our box in the bank' was not a delivery to Charles, but it was the mere employing him, as an agent of the grantor, to do an act for him whereby he could retain the custody of the deed during his life. In thus taking and depositing the deed the act of Charles was the act of Patrick, and although the box in the bank belonged to Charles, yet since it was used by both Patrick and Charles and under the control of each, the deed in that box was just as much within the possession and control of Patrick as if he had retained it about his person."

In this case there can be no question about the present delivery of the deed and about the actual surrender of its custody to the grantee and the placing of it absolutely beyond the control of the grantor. No further act was contemplated to complete the delivery of the deed and the passing of the title. The only condition connected with the deed, as stated by Mitchell, was, that it was made to secure the grantee that he would marry her when the proper time came when she would have a legal right to be married, and in case he did as he agreed she was to return the deed to him; that he was giving her the deed and she agreed not to record it except in case of his death before the marriage. No further act was to be done by the grantor or the grantee to perfect the title in the grantee. It passed to her

295—11

by the delivery and the property was to remain hers in case of the failure of the grantor to marry her when the time arrived that she could lawfully contract a marriage. The grantee retained no right to the control or custody of the deed or to recall it from the possession of the grantee. There can be no question of the acceptance of the deed by Mrs. Clem, the grantee. She took the actual possession of it and deposited it in Cassell's safe for safekeeping. It was recorded without her consent, but the delivery was not affected by the recording of the deed or the failure to record it. She would probably have returned the deed to the appellant after they were married or would have conveyed the property to him if he had requested her to do so, but this does not affect the question of the delivery of the deed or her acceptance of it.

The rule that the delivery of a deed to the grantee without any express reservation of the right to recall it, and with the intention that, without any further act on the part of the grantor, it shall be effectual to pass the title upon a future condition, cannot be defeated by parol proof of such condition, has been announced by the Supreme Court of Michigan in the case of *Wipfler* v. *Wipfler,* 153 Mich. 18. A note to this case in 16 L. R. A. (N. S.) 941, contains an elaborate discussion of the effect of the delivery of a deed to the grantee upon a future condition not expressed in the deed, in which will be found an extensive citation of authorities sustaining the rule announced in that case.

In our judgment the decree of the circuit court should be affirmed.

Mr. Justice Carter, also dissenting.