Mabel Peacock Browne et al., Plaintiffs in Error, v. Charles J. Vopicka, Defendant in Error.

Gen. No. 34,403.

Opinion filed April 15, 1931. Rehearing denied April 27, 1931.

OTTO GRESHAM and ORPHEUS A. HARDING, for plaintiffs in error.

MAYER, MEYER, AUSTRIAN & PLATT, for defendant in error.

MR. JUSTICE HEBEL delivered the opinion of the court.

This case comes to this court on a writ of error to review a judgment entered in the municipal court of Chicago in favor of the defendant and against the plaintiffs, in an action in a plea of trespass on the case on promises brought by the plaintiffs against the defendant for a breach of a contract for the sale of certain real estate in Chicago, Illinois.

Plaintiffs' fifth supplemental and amended statement of claim alleges that on June 27, 1924, the defendant by one Martin Carlson, his agent, bargained for and bought from the plaintiffs for the sum of $80,000, the property known as 1105–1107 South State Street, Chicago, the legal description of which is described in the contract. The defendant failed to carry out his contract, and on April 9, 1926, the plain-

tiffs sold the property to one Joseph J. Lahowetz for $75,000.

In the affidavit of defense the defendant denies that he entered into or ratified a contract with the plaintiffs for a purchase of the property; that Martin Carlson was an agent of the defendant, or that he had authority in writing to enter into a purchase contract on behalf of the defendant, and by an amendment the defendant more specifically pleads the statute of frauds, and alleges that there was no contract or memorandum signed by the defendant, or by any other person authorized in writing.

A jury trial was waived by the parties and at the conclusion of the plaintiffs' evidence the court, on motion of the defendant, entered a finding for the defendant, and judgment on such finding.

The evidence of the plaintiffs is to the effect that on May 31, 1924, the defendant wrote to Martin Carlson, a real estate broker in Chicago, notifying him to call on the defendant with a view to discussing plans for securing options on various pieces of property, and on June 5, 1924, the defendant again wrote to Carlson, setting forth the terms and prices upon which the defendant desired to ''obtain the option on four different lots, situated on State and Eleventh Streets, in the City of Chicago.'' In the same letter it was further stated:

''However, if the property could not be obtained for the prices above stated, and you should obtain offers for which the owners would sell, then I can decide whether I am willing to pay a bigger price or not, in which case I will give you special authority to obtain the option.''

Thereafter, the defendant went to New York City, but before leaving he directed Carlson to telegraph him the offer he might secure from the plaintiff; that pursuant to these directions Carlson, on June 26, 1924, sent through his office, a telegram to the defendant

signed by the American Traders Corporation, as follows:

"Western Union Telegram,
Chicago, June 26, 1924.

Charles J. Vopicka,
Biltmore Hotel,
New York, N. Y.

Carlson advises California people will return Chicago next week and are expected to accept Stop Bank here has been authorized by bank in Boston to sign up on price of thirty-five thousand dollars for corner Eleventh and Alley  They have written and asked to be authorized to secure Chicago Title Trust Company guarantee policy Stop Brown people have united in agreement to sell at eighty thousand dollars.  Appraisers have placed value on this property at ninety-one thousand five hundred fifty but they have compromised and willing to accept eighty thousand  Carlson wants you to wire immediately whether you wish him to sign at this price as he fears if delayed until parties arrive from California price will be increased Stop Thatcher expect to receive answer of acceptance from party out of town tomorrow  Chicago parties have agreed to sell  American Traders Corp." which message was answered by the defendant, in a telegram dated the next day, as follows:

"Delivery No. 6.
1924 June 27 AM 7 32

NYA205 24
BE New York NY 27

American Traders Corpn
812 Harris Trust Bldg., Chicago, Ills.

Tell Carlson to sign up for eighty thousand and also with bank for thirty-five thousand dollars so that the average price is acceptable.

VO Vopicka."

It is contended by the defendant that the letters and telegrams admitted in evidence are insufficient to

show that the defendant signed a writing such as is required by the statute of frauds, or that Carlson had been given, within the meaning of the statute, written authority to enter into a contract as agent of the defendant for the purchase of the land in question.

Section 2, chapter 59 of the Statute of Frauds, Cahill's Illinois Rev. Stats. 1929, ¶ 2, is as follows:

"No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party."

The question necessarily follows, does the evidence of the plaintiffs comply with the statutes so as to make the telegram such a memorandum or note in writing as to authorize Carlson to enter into a contract upon terms authorized by the defendant? It appears that authority was given to Carlson to execute a contract to purchase by the two telegrams which we have quoted in full. The message to the defendant in New York from the American Traders Corporation advises to the effect that certain parties would sell, and have invited an agreement to sell for $80,000, and that Carlson wishes to know whether or not the defendant wishes him to sign at that price. The reply to the American Traders Corporation to "Tell Carlson to sign up," did not constitute written authority to Carlson to execute the contract, the subject of this controversy. Carlson was not authorized to agree to the terms that appear in the contract. This contract was offered in evidence by the plaintiffs, and upon objection of the defendant, was not admitted, which the plaintiffs insist is error. Therefore, it will be necessary to consider whether the contract was law-

fully authorized in writing and properly executed by Carlson as agent upon written authority of the defendant.

This contract provides for the purchase of certain real estate from the plaintiffs for $80,000 subject to existing leases, all taxes and assessments levied after the year 1923; unpaid taxes, or special assessments for improvements not completed, and for unpaid instalments which fall due after delivery of the deed; to party wall agreements of record, and to a first mortgage of $25,000 to be paid by the purchaser; premiums on insurance policies held by the mortgagee, and the contract and earnest money to be held by Carlson. The telegram only authorized Carlson to sign for the purchase of the property for $80,000. The conditions agreed to by Carlson were outside of the written message, which plaintiffs contend is sufficient written authority, and in order to determine whether or not there was authority to agree to the terms of the contract, we are limited to the record. We are unable to find from an examination of the evidence in the record any written authority empowering Carlson, the agent, to agree to the terms which appear in this contract, and such terms are clearly outside of Carlson's written authority and as such are not binding on the defendant, and also are a violation of the statute of frauds.

The rule of law in this State is well settled by the Supreme Court in the following cases, that an agent can only sign a contract containing such terms as his principal authorized him to execute, and such authority must be in writing signed by the principal in order to comply with the statute of frauds, and this rule applies to the instant case and is controlling. *Georgacopulos v. Hruby,* 316 Ill. 439; *Peters v. Windmiller,* 314 Ill. 496; *Stein v. McKinney,* 313 Ill. 84; *Kohlbrecher v. Guettermann,* 329 Ill. 246.

The court did not err in sustaining the objection of the defendant to the admissibility of the alleged contract signed by Carlson, as agent.

The contention of the plaintiffs is that the defendant ratified the acts of Carlson in a manner so as to satisfy the statute, to which contention the defendant replies that a ratification recognizes an original absence of authority, so that if the ratification is relied upon, the evidence to support the same under the statute of frauds would have to be of the same character and completeness as that required by the statute for the original authorization.

It appears that the defendant signed the letter dated May 29, 1925, addressed to and received by Martin J. O'Brien, comptroller of the City of Chicago, which was a proposal to sell various pieces of property to the City of Chicago for $393,000, and which included the real estate of the plaintiff. This letter does not refer to the contract in question, and this proposal of the defendant is to sell property to the City of Chicago. There can be no doubt that the ratification of Carlson's act would have to be in writing. A case in point and which has been passed upon by our Supreme Court is *Kelly v. Fischer,* 263 Ill. 184. The court said: ''The subsequent arrangement at the bank by which the terms of sale were fixed did not bind the defendant, because a verbal promise by him to carry out the contract made by an agent not duly authorized did not meet the requirements of the statute. (*Kesner v. Miesch,* 204 Ill. 320.) The payment of the $50, alone, was not sufficient part performance to take the case out of the statute. (*Temple v. Johnson,* 71 Ill. 13; *Dicken v. McKinley,* 163 id. 318; *Koenig v. Dohm,* 209 id. 468.) The defendant had a legal right, if he saw fit, to claim the benefit of the statute, and the fact that he did so does not constitute a fraud which would permit complainant to invoke the rule that the Statute

of Frauds cannot be used to perpetrate a fraud. The moral wrong of refusing to be bound by a verbal agreement because it does not comply with the statute does not authorize the application of the doctrine of equitable estoppel. *Koenig v. Dohm, supra.*"

The letter of the defendant of May 29, 1925, above referred to, is not a ratification of Carlson's act in signing without authority the contract that is the subject of this lawsuit. It is self evident that an offer to sell property does not obligate the seller to perform until the offer is accepted. Assuming that the offer to sell the property owned by a third party was not accepted, surely by reason of that fact alone the person making the offer to sell would not be obliged to buy the property from the owner where no contract exists.

It is a matter of common knowledge that offers are frequently made when the proposed seller is not the owner of the goods and property at the time the offer to sell is made. In this case the defendant at the time was not the owner of the real estate when the offer was made to the City, and no doubt the defendant's offer was made with the expectation that if accepted he would be able to perform. But how can it be said that the writing of the letter is a ratification of the unauthorized terms of a contract signed by Carlson?

Having reached the conclusion that Carlson was not authorized in writing to agree to terms as agent of the defendant, we are of the opinion that there is nothing in this letter that would ratify such terms.

The plaintiffs made offers of proof of certain facts which were not admitted in evidence. They contend that the trial court was in error. The defendant's reply to this contention is that the offer did not amount to offers of proof, and that his objection both as to form and substance, was properly sustained.

We have examined the offers of proof for the purpose of considering them in connection with the evidence in regard to the authorization of Carlson to execute the contract, and to the ratification of his act, and do not find that any evidence bearing upon such questions was improperly excluded by the trial court.

For the reasons indicated in this opinion the judgment is affirmed.

*Affirmed.*

WILSON, P. J., and FRIEND, J., concur.