**Frank L. Newman, Appellee, v. W. L. Ross, Receiver of Toledo, St. Louis & Western Railroad Company, Appellant.**

PAYMENT, § 47*—*when carrier is not liable to shipper of rejected quarantined live stock for freight paid thereon.* Where hogs were shipped from quarantine without an Assistant State Veterinarian's permit therefor, and permission to unload them at their destination was refused because of the lack of such permit, and they were ordered by the shipper to be shipped back to their place of origin, he was compelled to pay the freight charges both ways in order to get possession of them, *held* that he could not recover such payment from the carrier, since the shipping of the hogs from the quarantine territory was illegal and both parties were *in pari delicto*, and the payment of the money was part of the illegal transaction.

Appeal from the Circuit Court of Coles county; the Hon. WALTER BREWER, Judge, presiding. Heard in this court at the April term, 1916. Reversed with finding of facts. Opinion filed October 13, 1916. Rehearing denied December 2, 1916.

C. E. POPE, for appellant; CHARLES A. SCHMIETTAU, of counsel.

THOMAS L. MARSHALL, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

The facts in this case are not controverted. Appellee on February 9, 1915, shipped over the Toledo, St. Louis & Western Railroad at Charleston, Illinois, two carloads of hogs to be transported to the City of Chicago. At that time the County of Coles was under quarantine regulations which prohibited the removal of hogs from that county except upon official permit issued by an Assistant State Veterinarian. No such official permit was issued for the shipment of these hogs at that time. When the hogs arrived at their des-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tination, the Chief of the Bureau of Animal Industry refused to permit them to be unloaded because no official permit for their shipment had been obtained. Thereupon appellee ordered them returned to Charleston, which was done. At that point appellant demanded and received $115 from appellee for freight charges for the round trip before it would deliver the hogs to appellee. Whether appellee could have been compelled to pay the $115 or whether he could have obtained his hogs without paying the same is not now before us for determination. The fact remains he chose to pay it. This suit was commenced to recover back the $115 freight paid by appellee. He obtained judgment in the Circuit Court for the full amount.

It is not denied by either of the parties to this suit that it was unlawful for appellee to ship and for appellant to receive and transport the hogs from Charleston to Chicago without an inspection and certificate or permit from an authorized officer. It is not denied that both appellant and appellee knew of the fact that such shipment was prohibited by quarantine regulations. They were therefore *in pari delicto*.

Where parties engage in an unlawful undertaking, the law will not assist either, but will leave them in the situation in which they have placed themselves. *Shaffner v. Pinchback,* 133 Ill. 410.

In *Holt v. Green,* 73 Pa. St. 198, the court said: "If a plaintiff cannot open his case without showing that he has broken the law, a court will not assist him. It has been well said that the objection may often sound very ill in the mouth of a defendant, but it is not for his sake that the objection is allowed; it is founded on general principles of policy, which he shall have the advantage of, contrary to the real justice between the parties. The principle of public policy is that no court will lend its aid to a party who grounds his action upon an immoral or upon an illegal act. The principle to be extracted from all these cases is that the law will

not lend its support to a claim founded on its own violation."

In *Coppell v. Hall,* 7 Wall. (U. S.) 558, the court uses this language referring to this class of defenses: "The defense is allowed, not for the sake of the defendant, but of the law itself.  *  *  *  The maxim, *ex dolo malo non oritur actio,* is limited by no such qualification. * * * Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case."

The cases above quoted from were cited with approval and followed in the case of *Devor v. Knauer,* 84 Ill. App. 184.

The facts in this case clearly bring it within the rule above announced.

The judgment of the Circuit Court is reversed with a finding of facts to be incorporated in the record of this court that the transaction out of which the claimed right of action arose was illegal, and was known to be so by both parties at the time the hogs were shipped and when the money sued for was paid, and the money sued for was paid as a part of such illegal transaction.

*Reversed with finding of facts.*