JOHN K. AYEW, as President of the GOLD COAST FARMERS ASSOCIATION, Appellant, v. WILLARD HAWES & Co., INC., and Others, Respondents, Impleaded with FREDERICK D. STRICKLER and Others, Defendants.

First Department, April 16, 1937.

*Sidney S. Bobbé* of counsel [*Alexander Slater* and *A. F. Sackheim* with him on the brief], for the appellant.

*Bernard Gordon* and *Samuel Brenner* of counsel [*Joseph B. Cotton, Howard W. Fensterstock* and *Roy F. Wrigley* with them on the brief; *Cotton, Brenner & Wrigley*, attorneys for Willard Hawes & Co., Inc., and others; and *Bernard Gordon*, attorney for African Cocoa & Mahogany Co., Inc., and others], for the respondents.

MARTIN, P. J.   The plaintiff, John K. Ayew, brings this action as president of the Gold Coast Farmers Association, an unincorporated membership association of more than 5,000 members, whose office and principal place of business is at Nsawam, in the county of Aquapim, Gold Coast, British West Africa.   The complaint alleges that the Gold Coast Farmers Association is a co-operative farmers' organization consisting of native Africans engaged in the co-operative enterprise of receiving, selling and distributing cocoa beans, the produce of its members.   Judgment is asked in the sum of $1,646,683.50 and interest, based on an alleged fraud of the defendants in employing one Strickler to become the agent for the sale of cocoa beans by the association after getting title thereto in his own name so that he would be in a position to transfer title to the other defendants and thereby cheat plaintiffs by not paying for the beans.   The basis of the second cause of action is the concealment of the relationship of Strickler to the defendants.

The record shows that the transactions leading to this litigation took place entirely outside the Gold Coast Colony.   The power

of attorney from the plaintiff organization to Strickler appears to have been made in London, England. It provided for the incurring of expenses by Strickler in the United States. He was to advance freight, transportation costs and export duties. The contract between Strickler and the defendant African Cocoa & Mahogany Co., Inc., was drawn in New York. It provided that the cocoa was to be of a quality acceptable at the port of New York where it was to be received by the defendants. The fraud was initiated in New York by defendants' agreeing to send Strickler to negotiate with the plaintiff association.

The attack on the complaint is based on the alleged lack of capacity to sue. The defendants maintain that, under the provisions of a statute of the Gold Coast Colony, known as " The Companies Ordinance," no association organized for gain could exist within the colony unless it registered as a company under the ordinance or was formed pursuant to some act of Parliament, Ordinance, or Letters Patent, or Royal Charter. The statute in question reads as follows:

" Prohibition of Partnerships Exceeding Certain Number. 4. No company, association, or partnership consisting of more than twenty persons shall be formed within the Colony after the commencement of this Ordinance, for the purpose of carrying on any business that has for its object the acquisition of gain by the company, association, or partnership, or by the individual members thereof, unless it is registered as a company under this Ordinance or is formed in pursuance of some Act of Parliament, Ordinance, or Letters Patent or Royal Charter."

A referee was appointed to determine (1) whether plaintiff association had authority to transact business in the colony; and (2) whether it was entitled to maintain this action in the courts of the colony. The referee has reported that the action could not be maintained, since it sought to recover damages sustained in connection with the transaction of business. Judgment has been entered dismissing the complaint.

The referee did not undertake to determine whether the action could be maintained in this State.

In the American Law Institute, Restatement of the Law of Conflict of Laws, the rule is set out that the law of the forum determines who may and who must sue and be sued (§ 588.1). In Corpus Juris (Vol. 12, p. 468) it is said: " As a general rule, an incapacity to sue imposed by a foreign law will not be recognized, particularly where to do so would in effect enforce the penal laws of another country."

Under the provisions of section 12 of the General Associations Law (formerly Joint-Stock Association Law) of our State, the president of an unincorporated association has full capacity to sue on behalf of his association.

The defendants urge that non-compliance by the plaintiff with the provisions of the statute renders it non-existent and deprives it of any standing in any court, either in the colony or elsewhere. No decision of any Gold Coast Colony court is cited in support of this contention. Defendants agree that colony courts would be controlled by decisions of the English courts and the courts of other colonies of the British Empire construing a similar statute. The English courts have refused to deny to non-complying associations capacity to sue to recover for wrongs done to the associations. Thus, in *Marrs* v. *Thompson* (86 L. T. R. [1902] 759) the plaintiffs were the trustees of a society of two hundred and ninety-one members who were all workmen at the Emma Colliery; the society was formed for the purpose of mutual insurance against death and accident and was called the Emma Colliery Accident Fund. The society was formed in 1890, but was not registered under the Companies Act, 1862, or the Friendly Societies Act then in force. The trustees brought the action against the treasurer of the society to recover moneys embezzled by the treasurer on the theory of money had and received. The defense was that the money had been stolen, and that as the society consisted of more than twenty members the action was prohibited by the Companies Act of 1862. Judgment was rendered in favor of the plaintiffs in the Newcastle-upon-Tyne County Court. The judgment was affirmed on appeal. Lord ALVERSTONE, C. J., after considering the question of necessity for registration, said, in part: " The consequences would be extraordinary, for if the fact of non-registration prevents the court from giving the members of the society any remedy and forces the court to treat them as outlaws, any person could defraud the society. * * * Unless the society is so contrary to public policy that the courts will not recognise it at all, I cannot conceive why the action should not lie. * * * It is perfectly true that the defendant would not have had the money if he had not been treasurer, but the contract was a contract to hand it over. It is said that we are to assume that when handed over it was going to be dealt with by the society in some illegal way. But it may be that the trustees will proceed to get the society registered. I do not know why it is to be assumed that, if they found the society to be illegal, they would not have returned to the members their shares. A defendant who has set up this defence is not entitled to have everything assumed in his favour. Why are we to assume, first,

that the contract by him to pay the money to those for whom he was no more than an agent was in furtherance of an illegal purpose? And why are we to assume in his favour that the plaintiffs were not prepared to put their house in order? I agree with the County Court judge in regard to what the real relations of the parties were, and I think that he was justified in coming to the conclusion that this was not an action in furtherance of an illegal or improper purpose, and the trustees were merely obtaining their own property which was held for the members."

In *Jeffrey & Co.* v. *Bamford* (L. R. [1921] 2 K. B. 351) the plaintiffs were professional bettors and bookmakers and brought the action as a partnership firm against the defendant to recover the total of six checks paid the defendant for bets won by her from the plaintiffs on horse races. The action was prompted by the failure of the defendant to pay her losses. The defendant contended that the firm of professional bookmakers was unable to maintain such an action, that a partnership for the purpose of carrying on a betting business was either illegal or was impossible in law and that the action should be dismissed. In deciding in favor of the plaintiffs, Judge McCardie said, in part: " But a partnership although illegal — *e. g.*, as contrary to s. 4 of the Companies Act, 1862 — can prosecute a person for stealing its property; *Reg.* v. *Tankard* (L. R. [1894] 1 Q. B. 548); and see *Reg.* v. *Frankland* ([1863] L. & C. 276); and Lindley on Partnership, 8th ed., p. 127. Compare, however, *Reg.* v. *Hunt* ([1838] 8 C. & P. 642). Many authorities on illegal partnerships are collected in Lindley, 8th ed., pp. 110 *et seq.*  *  *  * It is well said in Lindley on Partnership, 8th ed., p. 110: ' Illegality is never presumed, but must always be proved by those who assert its existence; and in order to show that a partnership is illegal it is necessary to establish either that the object of the partnership is one the attainment of which is contrary to law, or that the object being legal, its attainment is sought in a manner which the law forbids.' There is nothing in the facts before me which on the ground of illegality disables the present partnership from maintaining this action."

It has been held that if an illegal contract were made and an agent of one of the parties received the proceeds thereof, he could not hold the funds as against the person entitled thereto. In *Sharp* v. *Taylor* (2 Ph. 801) (41 Eng. Reprints at p. 1160) a coadventurer refused to account for the proceeds of a joint adventure on the ground that such joint adventure had violated some statute. Lord Chancellor Cottenham said: " Can one of two partners possess himself of the property of the firm and be permitted to retain it if he can show that in realizing it some provision in some act of

Parliament has been violated or neglected? \* \* \* The answer to this \* \* \* will be that the transaction alleged to be illegal is completed and closed and will not be in any manner affected by what the court is asked to do as between the parties. \* \* \* The difference between enforcing illegal contracts and asserting title to money which has arisen from them is distinctly taken in *Tenant* v. *Elliott*, 1 Bos. & Pull. 3, and *Farmer* v. *Russell*, 1 Bos. & Pull. 296, and recognized and approved by Sir WILLIAM GRANT in *Thomson* v. *Thomson*, 7 Ves. 473.''

The contract between the plaintiff association and the defendants is not, in and of itself, illegal. However, the plaintiff here is not suing on any contract. It is seeking to recover the equivalent of the property of its members fraudulently obtained by the defendants through the plaintiff's agent.

Our reading of the English authorities which have been called to our attention leads us to the conclusion that the courts of the empire would not deny to the plaintiff the right to bring this action to recover the value of property fraudulently taken from it.

The courts of this State have not hesitated to grant relief under somewhat similar conditions. In *Wood* v. *Erie Railway Company* (72 N. Y. 196) the statute prohibited persons transacting business under fictitious names. The plaintiff had been associated with his brother in the business of manufacturing and selling carriages under the firm name of '' Wood Brothers.'' After the brother had retired from the firm, the plaintiff continued the firm name, in violation of the statute, and shipped a carriage marked '' Wood Brothers,'' which by the terms of the bill of lading was '' to be delivered to the party entitled '' thereto. The property was badly damaged in transit. The railway company resisted the claim for damage to property while in transit because of the violation of the statute. In directing judgment for the plaintiff the Court of Appeals said, in part: '' Although a man may be engaged in a particular kind of business in violation of the statute cited, it does not necessarily follow that the property which he owns becomes forfeited and outside of legal protection, when an intruder or a person who for a particular purpose has possession of such property, and without any right or claim converts or destroys the same. A wrongdoer is not protected in the invasion of the rights of another, because such a party happens to be transacting business in violation of a special statute. Suppose property owned by a person who transacts business in violation of the law is placed in the hands of another for a special purpose by a letting for hire or otherwise, would there be no redress for a willful conversion or destruction or misappropriation of the same, or for any other wrong? Most

clearly there would be a remedy at law. The illegal transaction of the general business is one thing; but that has nothing to do with an unlawful act which destroys or appropriates the property of another, or commits any other injury, and cannot justify or excuse the same."

In *Lasswell Land & Lumber Co.* v. *Lee Wilson & Co.* (236 Fed. 322) the plaintiff and defendant had entered into a contract in Missouri, in which State the defendant, a foreign corporation, had not obtained a license, and, because of that, the contract was void. Defendant had advanced moneys on the contract; plaintiff repudiated the contract and converted the money to its own use, and when defendant sought to recover the same, plaintiff claimed that, since the contract was void, the defendant could not recover the money. The court said: "Every principle of justice and fair dealing requires that it should pay back this money to defendant; and this the law demands, notwithstanding the fact that the contract was void. One cannot make a shield of a void contract to rob an associate. Defendant's right of action, as asserted in its cross-bill, does not spring from or rest upon the void contract. It does not invoke the contract for the assertion of its rights. It seeks recovery notwithstanding the contract. Its action is properly classified as one in assumpsit for money had and received by plaintiff to defendant's use."

The plaintiff has urged that the registration act is not applicable to the members of the association because of the colony statute which has no counterpart in England, known as section 19, caption 7, which provides for the application of native laws and customs in all causes and matters where the parties thereto are natives. It is not necessary for us to interpret the effect of this ordinance on the present litigation, because of the conclusion we reach.

There is nothing in the public policy of this State which prompts the denial to plaintiff of the right to apply to our courts for relief from a fraud which has deprived it of its property. On the contrary, every instinct of justice demands refusal to recognize a rule which, under circumstances such as appear here, would be harsh and oppressive, unjust and inequitable.

The orders and judgment appealed from should be reversed, with costs, and the motion to dismiss the complaint denied.

O'MALLEY, DORE and COHN, JJ., concur.

Judgment and orders unanimously reversed, with costs, and the motion to dismiss complaint denied.