**Harry D. Brelsford, Appellant, v. George F. Stoll,
Appellee.**

**Gen. No. 9,228.**

Heard in this court at the January term, 1940. Opinion filed March 7, 1940.

Edwin C. Mills, of Lincoln, for appellant.

Trapp & Trapp, of Lincoln, for appellee.

Mr. Presiding Justice Riess delivered the opinion of the court.

The plaintiff, Harry D. Brelsford, has appealed to this court from a decree entered in the circuit court of Logan county, Illinois, awarding him damages in the sum of one hundred and fifty dollars and costs of suit against the defendant appellee, George F. Stoll, but denying him the equitable relief sought in an action for dissolution and accounting of an alleged partnership relation between said parties in the ownership and operation of certain pinball machines and for the appointment of a receiver to take charge of the assets pending such litigation.

The defendant Stoll, in his answer, had denied the existence of such partnership relation and claimed that the purchase and operation of the machines in question was a joint venture, wherein he had subsequently purchased from the plaintiff all of his interest, profits and good will for a consideration of $1,500, upon which $1,350 of such purchase price had been paid. The court so held and entered judgment for said alleged balance.

It appears from the evidence that in the spring of 1936, said parties had entered into an arrangement whereby the plaintiff, who was employed in the city of Lincoln and conducted a tavern known as Maple Hall at the outskirts of said city, had advanced $765 in money, and that the defendant, who conducted a radio and phonograph sales and repair shop in said city, had furnished his labor and services and certain moneys in connection with the purchase, instalation, repair and operation of said pinball machines and enterprise with the oral understanding that said parties were to share equally in the profits thereof.

It further appears that during the month of June, 1936, such machines, designated as "Palooka," "Western Racers" and by other trade names, into which money was played by the general public, were so purchased and installed in taverns and places of business designated as "spots" or locations, and so operated by them until December, 1937. Payments from moneys so played into the machines, called the "take," were paid by the defendant to the plaintiff in the aggregate amount of $700 during said period. During the latter month, it appears that an accounting was had by said parties whereunder the plaintiff contended that it was agreed that his share of such profits arising from the operation of said machines prior to that time was $1,500 and that a partnership relation continued thereafter under which he was entitled to an accounting in equity, while defendant contended that at said time the parties agreed that all interest of the plaintiff in said machines, locations, accrued profits and good will of said enterprise was sold by the plaintiff to him for a purchase price of $1,500, payable in instalments, all of which payments were subsequently made except the amount of one hundred and fifty dollars for which the judgment was entered herein.

Plaintiff assigns as error (1) the failure of the court to find that a partnership relation existed prior to and after December 15, 1937, which entitled him under the evidence to an equitable accounting of profits accruing after the latter date; (2) in admitting testimony on behalf of the defendant describing the manner in which the games were operated, tending to show that the same were gambling devices, to the prejudice of the plaintiff, and (3) in refusing to permit plaintiff to testify that it was his intention to enter into a partnership when the conversations and transactions took place between the parties.

In the defendant appellee's brief, he has stressed the contention that the entire venture was in the nature

of a gambling enterprise upon which no recovery could be had in a court of equity or otherwise.

While the nature of the alleged contract was not set up in the pleadings, it clearly and conclusively appears from the evidence and record herein that the entire enterprise and venture entered into by the parties consisted of an illegal arrangement for the purchase, location and operation of machines to be used as gambling devices in places of public resort into which five cent coins were played by the general public on the chance of having larger sums of money in varying amounts automatically released and returned into receptacles attached to the machines, which in some instances were designated as ''jackpots'' and in excess of thirty dollars, while in others the pinball operated by a spring and plunger would make no return whatever on the money played into the slots. It was the so-called ''take'' of moneys played by the public into these devices so used and intended to be used by both parties as games of chance which were to constitute the so-called profits of such enterprise upon which their purported contract was based.

The court did not err in permitting the actual purpose for which the alleged oral contract was entered into by the parties to be shown by the evidence, although the same might appear legal on its face. (*Craft v. McConoughy*, 79 Ill. 346.) That the plaintiff might testify to his intention to enter into a partnership relation would be immaterial in view of the actual nature of the enterprise and transactions, which were expressly forbidden by the provisions of the Criminal Code.

The alleged contract was illegal and void from its inception as contravening the provisions of the gaming statutes of Illinois and against public policy and was therefore unenforceable in whole or in part in a court of equity. All contracts and agreements entered into or executed by any person whatsoever, where the whole

or any part of the consideration thereof shall be any money, property or valuable thing won by gaming is expressly declared by sec. 329, ch. 38, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 37.259], to be void and of no effect.

Where persons engage in the unlawful business of gaming, courts will not assist either one but will leave them where they placed themselves. (*Samuels v. Oliver*, 130 Ill. 73, 22 N. E. 499.) As is said in *Shaffner v. Pinchback*, 133 Ill. 410, 24 N. E. 867, at p. 413: "Plaintiff in error having embarked his money in an enterprise prohibited alike by the statute, by good conscience and by public policy, placed himself and his money outside of the pale of the law, and if he has been despoiled by the failure of his associate to account for the funds placed in his hands for the purpose of carrying on the unlawful business, then both good morals and public policy require that the law should not aid him." To the same effect is *Israel v. Selman*, 263 Ill. App. 351.

This principle was early announced and has been uniformly adhered to by the courts of review of this State. In the case of *Miller v. Davidson*, 8 Ill. (3 Gil.) 518, decided in 1846, Justice Caton used this language: "No principle is better settled, than that where two or more persons embark in an unlawful transaction, and one gets the advantage of the others and appropriates more than his proportion of the spoils to himself, the court will not interfere to make him divide with the others. As they commenced with a violation of the law, they can not invoke its aid in any way. The law will not meddle with gains obtained by its own outrage, as between those who have been engaged in trampling it under foot."

The above principle was again cited with approval in *Mitchell v. Clem*, 295 Ill. 150, 128 N. E. 815, at p. 156, and in the recent case of *Klein v. Chicago Title & Trust Co.*, 295 Ill. App. 208, 14 N. E. (2d) 852, at p. 221. In

the case of *Mitchell v. Clem, supra,* it was further held that while ordinarily, as between the parties, a defense must be set up in the answer, a bill in chancery could be dismissed if the chancellor found that the public interest and the rules of equity demanded such a decree. It was there said (p. 156):

"Another application of the rule of equity is, that where a contract is illegal or against public policy a court of equity will not, at the suit of one of the parties who participates in the illegal or immoral intent, either compel the execution of the agreement or set it aside after it has been executed, because to give relief in such a case would injure and counteract public morals. (*St. Louis, Jacksonville and Chicago Railroad Co. v. Mathers,* 71 Ill. 592; *Craft v. McConoughy,* 79 id. 346.) This application of the rule is not in the interest of any party to the illegal or immoral transaction but in the public interest, and so far as dismissing the bill is concerned, the chancellor might do that and leave the parties where he found them without the defense being set up in an answer."

To the same effect is the case of *Vock v. Vock,* 365 Ill. 432, 6 N. E. (2d) 843, at p. 435, wherein the above-quoted language and citations are restated with approval by the court and it is further there said that "The law is that where the parties are in *pari delicto* no affirmative relief of any kind will be given to one against the other." And concerning the pleadings, it is there said (p. 436) that "The defendant, appellee here, claims that no defense was interposed to the counterclaim and that it should therefore be taken as confessed." "This court will not afford a party relief under an agreement confessedly void as against public policy, even though the question is not raised by an adversary."

The transaction in which the parties were engaged, being against public policy, their purported contract, so far as it remains executory, cannot be enforced by either party; nor can either party maintain an action

against the other for any right growing out of such contract, or of the illegal transaction in which they were engaged. The law simply refuses its assistance to either party. *Samuels v. Oliver, supra* (p. 86).

A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts. *De Kam v. City of Streator*, 316 Ill. 123, 129, 146 N. E. 550. And a judgment so taken upon a gambling contract prohibited by statute is void. *Vennum v. Carr*, 130 Ill. App. 309; *West v. Carter*, 129 Ill. 249, 21 N. E. 782.

Here, the parties were jointly engaged in an enterprise that was illegal and contrary to public policy wherein they stood in *pari delicto*. Whenever the illegality of their alleged contract and enterprise appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case and no valid judgment can properly be entered recognizing and enforcing the purported terms of such void contract in whole or in part, when the public interest so appears, whether or not the same is set up in the answer. *Newman v. Ross*, 202 Ill. App. 499; *Vock v. Vock, supra*.

While the court below properly admitted evidence which clearly and conclusively established the illegal nature of the gambling contract, no finding was made in relation thereto. A court of equity will not take jurisdiction and grant affirmative relief in enforcing or executing contracts which are illegal or against public policy and should dismiss complaints in such causes for want of equity and for lack of jurisdiction of the court to grant any relief therein. *Flack v. Warner*, 278 Ill. 368, 376, 116 N. E. 202.

We find, upon reviewing the record, that it clearly and conclusively appears from the evidence that the contracts and transactions in evidence herein were knowingly entered into by both parties for the purpose of conducting and operating an illegal gambling

enterprise and business contrary to law and against public policy and that the relief sought and money sued for by the plaintiff and the amount found and adjudged to be due by the trial court was based upon and a part of said illegal transactions; that such contract and transactions between said parties were illegal and void *ab initio;* that the chancellor below did not err in denying equitable relief to the plaintiff, but erred in adjudging any amount to be due the plaintiff from the defendant upon such illegal and void contract and transactions.

The decree of the circuit court of Logan county is therefore reversed and the cause remanded with directions to set aside the judgment in favor of the plaintiff for one hundred and fifty dollars and costs and dismiss the complaint for want of equity at the costs of the plaintiff.

*Reversed and remanded with directions.*