236 P.2d 358

**YOUNIS et ux. v. GRIEGO et al.**

No. 5331.

Supreme Court of Arizona.

Oct. 8, 1951.

Robert R. Weaver and Herbert Mallamo, of Phoenix, for appellants.

McQuatters & Stevenson, of Flagstaff, for appellee Joe Griego.

Wilson, Compton & Wilson, of Flagstaff, for appellee Emelia Griego.

STANFORD, Justice.

Action was brought in May, 1948, by which it was claimed by the appellants (plaintiffs therein) that appellant Tom Younis and appellee Joe Griego entered into a partnership at Flagstaff, Arizona, in November, 1934, in the conduct of a small grocery business.

Younis left Flagstaff in August, 1935, and went to Taos, New Mexico, where he remained until the spring of 1942. He then returned to Flagstaff and went to work with the Navajo Ordinance Depot, at Bellemont.

Younis and Griego were reared together, the latter having gone to live at the Younis home when he was about nine years of age. He was taken to Gallup, New Mexico, by the Younis family and was there placed in school, attending school under the name of Younis. Later, Griego and Younis married sisters who joined in this suit. Joe Griego and Emelia Griego, his wife, were divorced on December 7, 1946, but when this action was brought by Tom Younis and his wife to dissolve the alleged partnership, Emelia Griego joined her former husband in their answer to the action.

Prior to entering into the grocery business, appellee Joe Griego worked for Babbitt Brothers at Flagstaff as a delivery man. In September, 1934, Younis, being on his way to New Mexico, stopped over with Griego who had been hurt in an accident, and Younis stayed over to help him. They discussed a business for Griego to go into and finally the two of them went to Phoenix and interviewed officials with a view of entering into the wholesale liquor business. Neither of them had much means and they were advised not to attempt the wholesale liquor business but to first get a retail liquor license. They returned to

Flagstaff and Griego found a small grocery business for sale which was purchased on very easy terms. Later on, a retail license for the sale of liquor was applied for and received in the name of Griego. The lease of the premises containing a stock of goods, however, was drawn up and signed by both Griego and Younis.

In the action brought by appellants, they asked for dissolution of the partnership, for an accounting, and for the court to impress a trust on the properties derived from the partnership and declare them to be one-half owners of the same.

At the close of appellants' case, a motion for judgment was made by the appellees on the following grounds:

"1. That the evidence is wholly insufficient to establish the existence of a partnership between the parties;

"2. That assuming that a prima facie case of partnership is established by the evidence, it is at best a partnership at will, terminable at any time by either party by acts, words, or conduct inconsistent with the theory of a partnership relation;

"3. That where, as in this case, all profits and assets which are sought to be made subject to the claim of a party derive from the operation of a liquor license, a person not complying with the law relating to liquor licenses cannot be heard to make a claim to such profits or assets; and

"4. That it appears from the evidence and the pleadings that the plaintiffs have been guilty of laches, or unreasonable delay, in prosecuting their action; and that their action is barred by the operation of the statute of limitations, Section 29–204, subparagraph 2, Arizona Code Annotated, 1939."

Thereafter the court, from the bench rendered the following judgment:

"As far as the liquor business is concerned, the Legislature has prescribed that no person not a resident for the statutory time in the State of Arizona shall be a member of any partnership to sell liquor, or hold a license to engage in the liquor business. As I said before, suppose we do assume that there was a partnership in the grocery business, the moment that liquor business was opened up, by operation of law Mr. Younis was prohibited from going into that business. How could a partnership continue then, when they had set up a grocery business?

"That is one point I am concerned with. Of course, there are other points involved here. I think you have the Reports here of any Arizona cases you want; if you want a little time to do research on that, I would be glad to give you a little time."

\* \* \* \* \* \*

"Well, I am of the same opinion I was before the recess, as stated from the bench.

"The motion of the defendants is granted.

"The complaint is dismissed."

From the court's judgment and order dismissing the complaint and from the court's order denying a motion for new trial, appellants take their appeal. They submit nine assignments of error but we feel that we can dispose of the case by assignments 4 and 5, reading as follows:

"4. That the court erred in dismissing plaintiffs' complaint for the reason that the evidence disclosed that there was no laches or unreasonable delay in bringing the action of plaintiffs for an accounting.

"5. That the court erred in dismissing plaintiffs' complaint for the reason that under the law of partnership the statute of limitations would not begin to run until a demand for an accounting had been made or, there is a denial of the partnership relations between the parties thereto."

The testimony shows that appellant Younis did enter into a partnership with appellee Griego in December, 1934, in the conduct of a small grocery business which was purchased for a very little down and the balance on monthly payments. Under the partnership, the business was conducted by both of them. Later, within a few months, a package license was procured to sell liquor and shortly thereafter a retail liquor license was procured. In the summer of 1935, some seven or eight months after the partnership was entered into, Younis left Flagstaff and went to Taos, New Mexico for a heart condition, claiming that the elevation at Flagstaff was too high. However the testimony shows that Taos was a few feet higher. He stayed in Taos until 1942 and then returned to Flagstaff and worked at Bellemont, which is a few miles away from Flagstaff. He was there approximately one year. Younis engaged in many different occupations after he left Griego in 1935.

In 1941, as the testimony shows, Griego purchased a ranch near Phoenix. This ranch was occupied by Younis for a while, Younis claiming that he was doing it at the request of Griego and Griego claiming that it was a favor to Younis that he was there. In 1944 Younis conducted a service station in Phoenix in partnership with a man named Wimberly.

The testimony shows that during the absence of Younis from Flagstaff, Griego had constructed and conducted business at two other places, one called El Rancho Grande and the other called Griego's Place. Appellee Griego moved to El Rancho Grande in 1939 and the latter place was constructed in 1941. The testimony further shows that Griego borrowed $7000 from the Bank of Arizona at Flagstaff for the erection of El Rancho Grande, and later borrowed the sums of $5000 and $3000 from Riordan, Inc., of Flagstaff. It is our understanding from the testimony that to the $15,000 borrowed by Griego he added $10,000 of his own money in the construction of the new places. On none of the obligations made by Griego was Younis a signer nor in any way liable. The testimony also disclosed that after the time appellant Younis left Flag-

staff in 1935, during which time he claimed a partnership with appellee Griego, he had worked at sixteen different positions.

There can be no doubt, as we have stated, but that there was a partnership when the grocery business was started in 1934, but there has long since been a complete abandonment on the part of the appellant Tom Younis of any interest that might have accrued to him. The statute of limitations applicable, and we refer to section 29–204, A.C.A.1939, reads as follows:

"There shall be commenced and prosecuted within four (4) years after the cause of action shall have accrued, and not afterward, the following actions:

\* \* \* \* \* \*

"2. By one partner against his co-partner for a settlement of the partnership account, \* \* \*."

From 68 C.J.S., Partnership, § 414, we quote: "The right to maintain a suit for a partnership accounting may be lost through laches, especially where, by reason of plaintiff's long delay, evidence has been lost, or defendant has been placed in a disadvantageous position, or it has become impossible for the court to do full justice to both parties. Whether or not plaintiff is chargeable with laches is a matter to be determined according to the circumstances of the particular case, \* \* \*."

Applicable to assignment No. 4, we quote from 40 Am.Jur., Partnership, section 334, as follows: "The mere lapse of time, apart from the statute of limitations, may give rise to a presumption that the accounts have been adjusted and settled, and therefore, unreasonable delay or laches is sufficient to destroy the right to an accounting. \* \* \*" Also, applying to assignment No. 5, we quote from 40 Am. Jur., Partnership, section 333, as follows: "The right of a partner to have an accounting of the partnership affairs may be lost by the operation of the statute of limitations when made applicable to actions therefor, or by delay amounting to laches. No hard and fast rule can be laid down as to the time from which the statute of limitations runs on the right of a partner to have an accounting. The time when the right of action to sue for the settlement of partnership affairs accrues, so as to set the statute of limitations in motion, depends upon the circumstances of each particular case. \* \* \*" Since the time appellant Tom Younis left Flagstaff in 1935, there has been little or no interest shown by him in the activities of appellee Joe Griego, and he has exercised no control over any portion of the businesses he now asserts were part of the partnership. To allow the appellants to come to court now and claim an interest in a business which has prospered for a number of years, would in our opinion seriously subvert all principles of equity and justice.

For the foregoing reasons, the judgment of the trial court is affirmed.

UDALL, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concur.