Rustan Y. Lundstrom, Plaintiff, *v.* August R. De Santos, Defendant.

City Court of the City of New York, Trial Term, New York County, February 2, 1954.

*George Damashek* for plaintiff.

*George P. Doherty* for defendant.

Max J. Wolff, Referee. This is an action for the conversion of moneys. By consent the case was tried before me without a jury. Findings of fact and conclusions of law were waived.

The plaintiff is a bartender in a Long Island roadside restaurant. The defendant was a frequent customer, as he had been for years. On an evening in May, 1951, a little before dinnertime, the defendant entered the restaurant with ten or twelve Irish sweepstake tickets in his hand. These he offered to sell to various persons about the bar. None would buy, and

in the end the defendant bestowed a ticket upon the plaintiff, even allowing the latter to make his own selection. This was a sportsmanlike gesture which at the time may have seemed to the defendant to have small importance. But soon afterward the ticket won a little over $5,000. When the defendant learned through a list of winning numbers published in the *New York Journal-American* that the gift which he had made to the plaintiff had acquired this unexpected value, he hurried over to the restaurant and got the plaintiff, who is a little young for his trade, to hand back the ticket. The defendant said at the time that as his name was on the stub he was the only person who could collect the winnings, for which purpose he proposed to journey to Ireland, and to take his wife along. He agreed with the plaintiff that the latter should have the first thousand dollars and that the remaining moneys to be collected should be divided equally between them, the plaintiff to get half and the defendant to keep the other half to cover his wife's and his own traveling expenses. The defendant further suggested that, as the money would be collected in Ireland, nobody would have to pay any taxes. In substance, this is the testimony which I accept. It came not only from the plaintiff but from an apparently disinterested witness, another frequent customer of the restaurant, whose testimony was impressive. There was also testimony of two other persons which supported plaintiff's claim. The evidence on the plaintiff's side of the case greatly preponderated over that which was offered by the defendant.

The defendant told an unlikely story. He denied altogether that he had made a gift of the ticket but testified that he had left it with the plaintiff to "hold" after the latter had refused to buy, because he wanted to prove that this would be the winning ticket. If the defendant is to be believed he allowed the plaintiff to hold the ticket temporarily merely to convince the latter that this particular ticket would be the "winner", perhaps in this way to make manifest his own prescience or perhaps so that the plaintiff might come to feel sorry that he had not availed himself of the opportunity to buy.

I find that the defendant arranged with the plaintiff to go to Ireland in order to collect the winnings in the plaintiff's behalf, and to deliver to the plaintiff the first thousand dollars and one half of everything above that amount.

By way of interposing another obstacle to the plaintiff's recovery, the defendant asserted at the trial that the ticket was never his but belonged to his wife. However, the evidence is against the defendant. When he undertook to sell the tickets

in the restaurant he did not say that they belonged to his wife, and in subsequent conversations with the plaintiff, as overheard by witnesses whose testimony I credit, he made no such claim. No documentary evidence of any kind was produced before me by the defendant to show to whom the payment in Ireland was actually made, whether to the defendant or to his wife, or to show what disposition was made by defendant or his wife of the money which was collected in Ireland by one or the other. All this should have been susceptible of proof by documentary evidence. But more importantly, it is improbable that any name was written on the stub at the time when the defendant was trying to sell the tickets in the restaurant. A person does not usually buy a sweepstake ticket unless the stub is presented to him so that he can write his name upon it, and it is unlikely that defendant would have offered the counterfoils for sale if he did not have the stubs available. The defendant testified that the stubs were never in this country but were left at the airport in Shannon, Ireland. Even if this is true, although it certainly seems improbable, there was nothing to prevent the defendant from causing his wife's name to be written on the stub when he returned to Shannon to collect. The defendant's wife attended the trial, and the defendant even called her as his witness; but although she testified about another matter she was significantly silent, she was not asked, about this important point. She did not testify that she owned the ticket or that she collected or received any part of the winnings. When the defendant gave the ticket to the plaintiff, and afterwards, he talked about the ticket as if it were his own; and if his wife did receive or collect the money — as to which there is no evidence in the case, oral or documentary, except the defendant's own testimony — this, in my opinion, was nothing more than a device to circumvent the plaintiff's claim.

The important question to consider is whether the arrangement between plaintiff and defendant was illegal or contrary to public policy.

I think the case is distinguishable from *Goodrich* v. *Houghton* (134 N. Y. 115), for there the plaintiff and the defendant were partners or joint adventurers. Together they bought the lottery ticket and agreed to share the winnings with each other. The point of the *Goodrich* case is that a court will not meddle in a gambling transaction. It will not help one partner against the other for the same reason that it will not allow a recovery by the winner against the person who has conducted the lottery.

In such a situation, the parties are held to be *in pari delicto*. I know of no New York case other than *Goodrich* v. *Houghton* (*supra*) which directly involved an agreement to share in the winnings of a lottery (but see *Zak* v. *Simpson*, 168 App. Div. 207, and *Moskowitz* v. *Cohen*, 158 Misc. 489). However, there are cases in other jurisdictions which are factually much like the case in hand and in which a recovery was permitted by a principal against the agent whom he had appointed to collect the winnings but who instead converted them (*Matta* v. *Katsoulas*, 192 Wis. 212; *Brady* v. *Horvath*, 167 Ill. 610; *School Dist. No. 39* v. *Casey*, 243 Ill. App. 434; *Cuffman* v. *Blunkall*, 22 Tenn. App. 513; *Jeffrey & Co.* v. *Bamford*, L. R. [1921] 2 K. B. 351; and see *Kearney* v. *Webb*, 278 Ill. 17).

The law is well settled in New York and elsewhere that it is no defense to an agent who has converted moneys belonging to his principal that such moneys were the fruit of an illegal transaction (*Woodworth* v. *Bennett*, 43 N. Y. 273, 275–276; *Wood* v. *Erie Ry. Co.*, 72 N. Y. 196; *Leonard* v. *Poole*, 114 N. Y. 371, 379; *Ayew* v. *Hawes & Co.*, 250 App. Div. 596, 600 *et seq.*, affd. 276 N. Y. 634; *Murray* v. *Vanderbilt*, 39 Barb. 140, 152–153; and see *Stone* v. *Freeman*, 298 N. Y. 268, 271; *Loughran* v. *Loughran*, 292 U. S. 216, 228; *McBlair* v. *Gibbes*, 17 How. [U. S.] 232, and *Judson* v. *Buckley*, 130 F. 2d 174, 180).

When the plaintiff arranged with the defendant to collect the winnings in Ireland, the lottery was over and the ticket and the winnings were the plaintiff's property. There was no executory agreement between the plaintiff and the defendant to participate in an illegal transaction. The defendant has converted the moneys which he induced the plaintiff to appoint him agent to collect. It need hardly be said that it is undesirable to exclude the property of any person from the protection of the law merely because of its origin, and that a judgment producing such a result should be, whenever possible, avoided.

There remains to be considered the amount of plaintiff's recovery. Before the institution of this action, the plaintiff's then attorney wrote a letter to the defendant demanding $3,162.60. This may be the correct amount, but the plaintiff failed to introduce evidence at the trial showing precisely what sum of money the defendant collected. The defendant testified that he (or his wife, as he put it) collected about $5,000. Although the winnings were probably a little larger, in the absence of more exact evidence I cannot find that they exceeded $5,000. Under the arrangement between the parties the defend-

ant was required to turn over to the plaintiff the sum of $1,000 and half of all above that sum, which thus comes to a total figure of $3,000.

Judgment may be entered in favor of the plaintiff and against the defendant in the sum of $3,000, with interest, as demanded in the complaint.