360 P.2d 213

Violet Rector BRAND, dealing with her sole
and separate property, Appellant,

v.

Kaye A. ELLEDGE, a single person,
Appellee.

No. 6681.

Supreme Court of Arizona.

March 15, 1961.

Rehearing Denied May 9, 1961.

Bayham & Huffsteter, and Stanley Z. Goodfarb, Phoenix, for appellant.

Stahl, Murphy & Blakley and James M. Smith, William L. McClain, Phoenix, for appellee.

JENNINGS, Justice.

This is an appeal from the judgment of the superior court dismissing an action for accounting and dissolution of a partnership. The parties herein, as in the court below, will be referred to as plaintiff and defendant.

Early in 1941 plaintiff, a married woman who was then pregnant, came from New York City to Phoenix and purchased a home with funds received from her husband who either directed or acquiesced in the move. Plaintiff's husband, a member of the Royal Air Force, continued remittances to her until he was killed in action early in 1942.

Defendant, a single woman, moved into and resided in plaintiff's home until plaintiff remarried in 1942. Defendant, an impecunious tavern worker, persuaded plaintiff to purchase the "Broadway Inn" located in Phoenix, and to invest several thousand dollars more to acquire a liquor license, fixtures, etc., and generally remodel the establishment. A copartnership was effected. The defendant brought to the business her experience and was delegated the responsibility of operation and management. The tavern's name was changed to Happy Landings.

Together, on August 13, 1941, the partners met with the superintendent of the liquor department and made application for the transfer of the license in their joint names. After inquiry as to qualifications, he advised that because plaintiff had not resided in Arizona a sufficient length of time to become a qualified elector, the license would have to be taken in the name of the defendant. He further suggested that when plaintiff had been a resident of the state one year that the partners should return and the license would then be issued in their joint names. Plaintiff at that time paid the transfer fee of $25 and the license was issued in the name of the defendant.

Upon leaving the superintendent's office the parties, at the suggestion of the defendant, went to the county recorder's office and signed and filed a certificate of partnership between themselves, reciting that they were doing business under the style and fictitious name of Happy Landings, located.

at 3815 South Central Avenue, Phoenix, Arizona. The certificate did not recite the terms of the copartnership.

Between the date of possession and January 12, 1942, $11,797.35 of plaintiff's funds were invested in the business. This was acknowledged by the defendant through a statement furnished to plaintiff.

Upon fulfilling residence requirements plaintiff suggested compliance with the previous suggestion of the superintendent concerning the liquor license transfer to their joint names. Defendant stated that such formality was unnecessary as they were partners of record with full confidence in each other.

Plaintiff made periodic inquiries of defendant concerning the business' welfare and was shown various improvements, including new land purchased, a new tavern building and apartments under construction on the original property, together with a swimming pool. Defendant advised that all profits were being reinvested in the business to finance the additional improvements.

Plaintiff continued to live in Phoenix until she divorced her second husband in February, 1945, at which time she returned to New York with her children until 1949. Through frequent correspondence plaintiff kept abreast of the business. In 1949 she returned to Phoenix for a few weeks. Upon inspecting the premises she was again advised by defendant concerning various improvements and that all profits were being reinvested in the business.

Plaintiff then went to San Diego, married John Brand, a navy man, and returned to Phoenix where she lived from 1951 to 1953. In 1953, with her three children, plaintiff accompanied her husband to Tokyo, Japan. She returned to Phoenix the latter part of 1955. At that time or early in 1956 plaintiff asked defendant for an accounting and was advised by defendant that she (plaintiff) had no interest whatsoever in the place and that no accounting would be made. After consulting with several attorneys, formal demand for an accounting was made in July 1956. This litigation followed defendant's refusal to account.

Defendant filed a general denial, specifically denied that a partnership existed, plead the four-year statute of limitations, A.R.S. § 12–550, and laches. At the trial, upon close of plaintiff's case, the court dismissed the action upon defendant's motion on the ground that the partnership agreement was illegal and void, in that the law as it existed in 1941 required the names of all partners to be licensees. Hence this appeal.

The pertinent provisions of the 1939 statutes are as follows:

Section 72–105(d) A.C.A.1939, A.R.S. § 4–201, subd. D

"Upon receipt of an application for a spirituous liquor license, the superintendent shall place the same on file until the expiration of the time fixed for the certified order by the governing body of the city or town or the board of supervisors, and shall consider such order together with other facts in his possession relating to the qualifications of the applicant."

Section 72–106(a) A.C.A.1939, A.R.S. § 4–202

"Every spirituous liquor licensee shall be a qualified elector. If a partnership, all members shall be qualified electors."

Section 72–108(a) A.C.A.1939, A.R.S. § 4–203, subd. A

"The superintendent shall issue a spirituous liquor license only upon satisfactory showing of the capability, qualifications, and reliability of the applicant, and that the public convenience requires and will be substantially served by such issuance."

Plaintiff urges that an agreement between partners to own and operate a tavern in the State of Arizona in 1941 where only one partner is qualified to be licensed, was legal and valid if prior to the issuance of the license a full disclosure was made to the department of liquor licenses and control. This disclosure was made to the superintendent of the liquor department.

However, this disclosure established that under the law as it then existed the plaintiff was not qualified to hold a license or any interest therein. The mere statement of the proposition discloses its infirmity. The very purpose of the investigation of the superintendent is to ascertain whether or not the applicant is qualified; having ascertained that the applicant was not qualified, the matter ends. It will be noted that the 1939 statute required the applicant to be a *qualified elector* of the state. This has since been amended to require that an applicant be only a bona fide resident. A.R.S. § 4–202, subd. A. The lack of qualification of the plaintiff at that time was merely a technical one. Under the present law she would have qualified, having been a bona fide resident in August 1941.

Defendant argues that the partnership agreement is void as being contrary to public policy. The law of partnership does not permit a suit by one partner against the other for accounting when the subject matter of the contract is illegal. The facts in this case present some interesting legal questions. Assuming that the superintendent of the liquor department had full knowledge, which he apparently did, that the parties were in fact partners and that they intended to operate the liquor establishments as partners—what is the legal status of the license? Certainly the issuance of the license was in technical violation of the statute though no moral wrong

was committed. Under such circumstances it could be argued with some force that the license was void in the first instance.

The conclusions which we have reached make it unnecessary for us to decide whether the liquor license was void ab initio. This case must be decided upon other principles of law. Both the plaintiff and defendant cite prior decisions of this Court, namely, Clark v. Tinnin, 81 Ariz. 259, 304 P.2d 947; Duncan v. Truman, 74 Ariz. 328, 248 P.2d 879; Hom Moon Jung v. Soo, 64 Ariz. 216, 167 P.2d 929; Younis v. Griego, 72 Ariz. 369, 236 P.2d 358. The facts in each case very greatly and none furnish a precedent on the principal issue presented here.

■ The essence of the decision of the lower court, although not stated, is that one party may not enforce an illegal contract against the other where the parties are in *pari delicto*. The trial court must necessarily have found the parties in *pari delicto,* the evidence having established that in the face of the statute they did enter into a partnership agreement for the purpose of operating a liquor tavern. We think the court erred in dismissing the action. As a general rule a court will not lend itself to the enforcement of an illegal contract where the parties are in *pari delicto,* not because it endorses the conduct of either party but as a matter of public policy.

This rule is well stated in Brelsford v. Stoll, 304 Ill.App. 222, 26 N.E.2d 159. The parties entered into a partnership agreement for the purpose of conducting a gambling establishment in direct violation of the laws of Illinois. The court said at page 162 of 26 N.E.2d:

"* * * Whenever the illegality of their alleged contract and enterprise appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case and no valid judgment can properly be entered recognizing and enforcing the purported terms of such void contract in whole or in part, when the public interest so appears, whether or not the same is set up in the answer. Newman v. Ross, 202 Ill.App. 499; Vock v. Vock, [365 Ill. 432, 6 N.E.2d 843, 109 A.L.R. 1170], supra."

■ This principle is founded upon the equitable doctrine of he who comes into court must come with "clean hands". However, this rule applies only where the parties to the wrongful act are equally at fault. It need not apply where one party's wrong is slight in comparison with the other as was the case in Cosden Oil & Gas Co. v. Hendrickson, 96 Okl. 206, 221 P. 86, 90, where the court said:

"* * * equity will sometimes interfere to prevent a greater offense against public morals and good conscience. * * *"

" * * * To refuse to interfere would, in effect, condone the reprehensible transaction between plaintiff and the guardian. Therefore this court will attempt to administer the equities of the parties as they appear, to prevent unnecessary injustice and prevent the creation of an inequitable situation. * * * "

The principle is again stated in Furman v. Furman, 178 Misc. 582, 34 N.Y.S.2d 699, at page 704.

"A court of law will not lend its aid to either of the parties to an illegal or fraudulent transaction. However, it is true that where the parties are not equal in guilt (in pari delicto) but where one of them, although participating in the wrong, is less guilty than the other, the party more at fault cannot employ the doctrine of pari delicto to shield his deliberate invasion of the rights of the former. In such a situation, the parties are said to be in *particeps criminis* and not in pari delicto, and a law court will grant relief to the less guilty of the parties who has suffered a deliberate wrong. Duval v. Wellman, 124 N.Y. 156, 160, 26 N.E. 343; Tracy v. Talmage, 14 N.Y. 162, 67 Am.Dec. 132; Ayew v. Willard Hawes & Co., Inc., 250 App.Div. 596, 295 N.Y.S. 49; Wood v. Erie Railway Co., 72 N.Y. 196, 28 Am.Rep. 125. (Emphasis ours.)

" * * * Under certain circumstances, equity will aid such a plaintiff if it is found that he is the less guilty of the two parties and that he has been deliberately wronged by the defendant. * * * Under such circumstances, equity will not deny the plaintiff relief on the basis of the clean hands maxim unless the parties are in pari delicto. 1 Pomeroy's Equity Jurisprudence, 4th Ed., § 403; Berman v. Coakley, 243 Mass. 348, 137 N.E. 667, 26 A.L.R. 92; Colby v. Title Insurance & Trust Co., 160 Cal. 632, 117 P. 913, 35 L.R.A., N.S., 813, Ann.Cas. 1913A, 515; 10 R.C.L. § 102, p. 354, and cases there collected. * * * "

In Isaacson v. Isaacson, Sup., 28 N.Y.S. 2d 517, a father conveyed and transferred his business to a son, in consideration of which the son agreed to support the father's minor children. The purpose of the transaction was to enable the son to evade military service, Congress being just about to enact the Selective Service Law, 50 U.S.C.A. Appendix, § 301 et seq. Shortly thereafter, the father remarried and using that as an excuse the son ousted the father from his business. The father sued for a rescission. In granting relief to the father the court stated, commencing at page 521:

" * * * The Court is of the opinion that participation alone in such a scheme is reprehensible; and against

the public interest, but notwithstanding, does not bar the plaintiff, under the circumstances presented in this case, from obtaining relief. * * *

"It is the defendant who conceived the devious scheme herein involved * * *. The plaintiff gained nothing thereby * * *. All the advantages arising from the scheme flowed to the defendant; and, under the circumstances, his conduct is the more culpable."

■ A technical, legal position in a court of equity shifting the entire burden to another party to the latter's detriment may not be maintained by a defendant (a party to the transaction in violation of public policy) who knowingly accepted benefits of such transaction. 30 C.J.S. Equity § 91, p. 467.

The evidence discloses that the plaintiff in this action acted in the utmost good faith. She made full disclosure to the superintendent of the liquor department when the application was filed. While all persons are presumed to know the law, she was assured that when she qualified by residence, which would be a matter of but a few months, the license would be issued jointly with the defendant.

■ Admittedly, the parties did intend to operate the Happy Landings Tavern as copartners. Their certified declaration to this effect is recorded. Admittedly, the

plaintiff did invest some $11,700 in the business for which she has had nothing in return. The defendant, some years older than plaintiff and a woman experienced in business, conceived the idea that she was legally invulnerable against any claim the plaintiff might make to the business. We think under the facts of this case, if plaintiff's conduct was blameworthy at all, it was not culpable and she cannot be considered in *pari delicto* with defendant. To sustain such a defense would be abhorrent to the principles of equity and result in a gross miscarriage of justice.

■■ Defendant also specifically pleaded as a defense the statute of limitations and laches. As stated by this Court in Younis v. Griego, 72 Ariz. 369, 236 P.2d 358, the right of a partner to have an accounting of the partnership affairs may be lost by the operation of the statute of limitations or by delay amounting to laches. No hard and fast rule can be laid down as to the time within which the statute of limitations runs on the right of a partner to have an accounting. The time when the right of action to sue for the settlement of partnership affairs accrues, so as to set the statute of limitations in motion, depends upon the circumstances of each particular case. The trial court having directed the verdict on the ground that the partnership agreement was unenforceable, evidence was not presented on the question of whether there was undue delay on the part of the

plaintiff in instituting the action. We are therefore not able to pass upon this issue. The trial court is instructed to set aside the order of dismissal and permit the parties to present evidence on this question.

Judgment reversed and remanded with directions.

STRUCKMEYER, C. J., UDALL and LOCKWOOD, JJ., and ROSS F. JONES, Judge of Superior Court, concur.

NOTE. Vice Chief Justice BERNSTEIN being disqualified, the Honorable ROSS F. JONES, Judge of Superior Court, Maricopa County, was called to sit in his stead and participate in the determination of this appeal.